EDWARD H. BENNETT, JR., & another, trustees, *vs.*
LEONARD FLORENCE, trustee, & others.

Suffolk.    May 7, 1964. — June 29, 1964.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Trust,* Voting trust. *Probate Court,* Jurisdiction, Equity proceeding. *Jurisdiction,* Concurrent jurisdiction.

A Probate Court had no jurisdiction under G. L. c. 215, § 6, as amended through St. 1954, c. 556, § 2, of a claim set forth by allegations in a petition by two of three trustees of a voting trust of all the stock of a corporation against the third trustee and others relative to alleged breaches by the respondents of an agreement made with them by one of the petitioners, even though it was in the interest of the voting trust. [711]

A Probate Court had jurisdiction under G. L. c. 215, § 6, as amended through St. 1954, c. 556, § 2, of a claim set forth by allegations in a petition by two trustees of a voting trust of all the stock of a corporation, one of whom was also a beneficiary of the trust, against the third trustee and a former trustee, that the respondents acting as trustees had improperly voted to transfer all the assets of the corporation to another corporation and that the transfer was for less than fair value

and left the transferor corporation with no assets and with liabilities: the righting of the alleged wrong to any nonassenting beneficiary of the trust was a matter "relative to" the trust.   [711–712]

Averments in a petition in a Probate Court by two of three trustees of a voting trust of all the stock of a corporation against the third trustee and a former trustee, who constituted a majority of the directors of the corporation, that the respondents had improperly allowed a "financial adviser" of the corporation, who had made capital contributions to it, to speculate with its funds and to be paid interest by it on his contributions, stated claims by the corporation for violation of the respondents' duty to it as directors, but not "matters relative to" the trust, and the Probate Court had no jurisdiction of such claims under G. L. c. 215, § 6, as amended through St. 1954, c. 556, § 2.   [712–713]

Where an equity proceeding in a Probate Court involved matters partly within and partly not within its jurisdiction under G. L. c. 215, § 6, prior to the amendment of § 6 by St. 1963, c. 820, § 1, and all such matters could be appropriately resolved in a suit in equity in the Superior Court for declaratory relief commenced after the hearing in the Probate Court and before the effective date of the 1963 statute, this court in the circumstances ordered the Probate Court proceeding dismissed without prejudice, even though at the time of this court's decision the 1963 statute, broadening the equity jurisdiction of the Probate Court, had become effective.   [713–714]

PETITION IN EQUITY filed in the Probate Court for the county of Suffolk on June 10, 1963.

The case was reported by *Keville,* J.

*Edward H. Bennett, Jr. (John D. Dwyer & Joseph H. Choate, 3rd,* with him) for the petitioners.

*Bernard P. Rome (Joseph R. Standell* with him) for the respondents.

WHITTEMORE, J.   The petitioners are two of three trustees of a voting trust of all the stock of Raimond, Inc. under an agreement of June 18, 1956.   Their petition in the Probate Court for Suffolk County is, by its title, "for accounting and recovery of assets."   The respondents, and certain of their alleged acts as described and set out in the petition are:  (1) Raimond, Inc. and two (a majority) of its directors, that is (2) Judah M. Stone, and (3) Leonard Florence; (4) Dewey D. Stone, a "financial adviser and guarantor of alleged credit of . . . Raimond [Inc.]" who had made cash contributions to that corporation, and had, by assignment, succeeded to the stock of Raimond, Inc. owned by Judah Stone and Florence; and (5) Raimond Silver Manufactur-

ing Company, Inc. (Silver), a corporation to which all of the assets of Raimond, Inc. had been transferred at less than fair value. Florence is also the third trustee of the voting trust; Judah Stone was a trustee of the voting trust until November 21, 1961, when he was removed by decree of the Probate Court. The petitioner Bennett is the successor trustee pursuant to decree of the Probate Court dated July 10, 1962 (decrees affirmed, *Massa* v. *Stone,* 346 Mass. 67). Florence and Judah Stone are officers and directors of Silver and, with Dewey Stone, own or control all the stock of Silver.

The judge in the Probate Court on December 31, 1963, sustained the pleas to the jurisdiction filed by the respondents other than Raimond, Inc. and sustained their demurrers for lack of jurisdiction. The judge then reported the case under G. L. c. 215, § 13.

The petition alleges wrongs to Raimond, Inc. in the period from 1955 through January 11, 1961, culminating in the transfer on that date to Silver of all the assets of the corporation for less than fair value leaving the corporation with no assets and alleged liabilities to Dewey Stone and Florence. There is no mention of creditors other than these alleged wrongdoers. These wrongs are asserted to have been at the instigation of Dewey Stone and with the coöperation and participation of Judah Stone and Florence.

The petition sets out that in voting to transfer all the assets of Raimond, Inc. to Silver, Judah Stone and Florence acted as trustees of the voting trust at the instigation of Dewey Stone and without notice to the third trustee, the petitioner Raimond Massa. Massa was also a beneficiary of the voting trust having with Judah Stone and Florence transferred shares of Raimond, Inc. thereto.

The petition also alleges that the three individual respondents have subjected the assets of Raimond, Inc., now in the possession of Silver, to improper charges, "all in breach of the fiduciary duties of respondents Florence and Judah Stone to the Trust, to the knowledge of and at the instigation and inducement of . . . Dewey Stone."

The petition further alleges breach by the respondents of an agreement made by them in January, 1963, with the petitioner Bennett, as trustee, in that they authorized a "management fee agreement" between Dewey Stone and Silver and authorized Silver to pay an unreasonable increase in salary to Florence. It is alleged also that the January, 1963, agreement made Silver's payments to Judah Stone for legal fees subject to court review.

The petition prays (1) an injunction against certain payments by Silver to Dewey Stone and to Florence; (2) that Silver be ordered to turn over to Raimond, Inc. all its assets, with certain limited exceptions, and its books, records, and accounts; (3) that Raimond, Inc. be ordered upon receipt of the assets to assume the liabilities of Silver, with stated exceptions; (4) that Raimond, Inc. be enjoined from making payments in certain categories to Dewey Stone or to Florence and from paying any legal fees, charged or incurred by any individual respondent; (5) that the court review all legal fees charged to or incurred by either corporation and order reimbursement by individual respondents; (6) that Dewey Stone be ordered to account for each stock transaction involving the use of funds of Raimond, Inc.; (7) that the individual respondents and Silver be ordered to account to the petitioners for the use and disposition of all the assets of Raimond, Inc. and profits arising from their use or disposition after the transfer to Silver; and (8) that a receiver of Silver be appointed.

The voting trust agreement of June 18, 1956, transferred to the three trustees all the stock of the corporation. Under the agreement, the trustees, until June 18, 1966, or such earlier date as they determine as the date for terminating the trust, possess and may exercise all stockholders' rights; they are to make payments to certificate holders equal to dividends received by them and their obligation in any act or vote is to "exercise their best judgment in the interests of . . . Raimond . . . [Inc.] to the end that its affairs shall be properly managed." There is a provision specifying that all questions be determined by the decision of a major-

ity of the trustees including therein, however, Judah Stone.

The petitioners rely on the grant of jurisdiction to the Probate Courts (G. L. c. 215, § 6, as amended through St. 1954, c. 556, § 2[1]) " '. . . of all cases and matters relative to . . . trusts created by will or other written instrument . . . .' These are words of broad import." *Barron* v. *Barronian*, 275 Mass. 77, 78–79. The grant is of "all matters cognizable under the general principles of equity jurisprudence relative to the estates of the wards [or, as here, to the trust under the written instrument]." *Kobrosky* v. *Crystal*, 332 Mass. 452, 455.

1. Breaches of the agreement of January, 1963, are matters relative to the agreement but not to the trust. That the trustee, Bennett, made the agreement in the interest of the voting trust did not make its enforcement a matter relative to the trust.

2. The Probate Court has jurisdiction of the claim for improperly voting to sell the assets. The respondents who so voted acted as all the stockholders of Raimond, Inc. G. L. c. 156, § 42. Subject to the rights of creditors, all the stockholders could convey all the assets for inadequate or no consideration and the corporation would have no claim for a wrong done to it. The wrong in voting to convey all the assets for less than fair value was to the beneficiaries of the voting trust who did not join in or benefit from the transfer and whose beneficial interest under the trust was thereby impaired or destroyed. The righting of this wrong is a matter relative to the voting trust.

The trustees in respect of this claim assert no direct right of the corporation as they would do did they call for the return of assets in the interest of outside creditors. Undoubtedly in the absence of such creditors and on the facts alleged the corporation may bring a suit to have its assets restored. The equitable interests in its stock, and hence in its assets, of the holders of voting trust certificates

---

[1] Statute 1963, c. 820, § 1, was effective March 1, 1964, to give the Probate Courts original and concurrent jurisdiction in equity. There is, however, power in any respondent or intervener to remove to the Superior Court.

enable the corporation, by its own direct action, or at the instigation of the trustees as stockholders or of nonassenting certificate holders as equitable stockholders, to rectify such wrong as has been done. See *Perry* v. *Perry,* 339 Mass. 470, 480.

The claim, however, remains a claim relating to the voting trust. The case is the converse of *Lawrence* v. *Curtis,* 191 Mass. 240, where it was held that defendant voting trustees had acted only in their capacity as directors of the corporation.

3. The averments that Judah Stone and Florence improperly allowed Dewey Stone to speculate with the corporation's funds and improperly authorized the payment of interest on his capital contributions state violations of their obligations as officers and directors of the corporation.

The petitioners contend that these acts should be recog' nized as also in violation of the trust obligations of the respondents. That is, we should reject the rule of *Lawrence* v. *Curtis,* 191 Mass. 240, and follow such cases as *General Rubber Co.* v. *Benedict,* 215 N. Y. 18, *Matter of Auditore,* 249 N. Y. 335, *Matter of Horowitz,* 297 N. Y. 252, 258, and *Matter of Hubbell,* 302 N. Y. 246, 258, 261–262. See 50 Harv. L. Rev. 963; Cahn, Estate Corporations, 86 U. of Pa. L. Rev. 136; Note, 109 U. of Pa. L. Rev. 713.

In the *Auditore* case, in a majority opinion, it was held that a removed administrator, who had held one half of the stock of the corporation and had by his act as an officer so misappropriated the corporation's funds as to destroy or lower the value of the stock, was liable for the damage done to the estate. A judgment recovered by the corporation was held not a bar as the remedies applied to different duties and relationships. If the corporation's judgment had been paid no harm would have been done the assets of the estate but as that judgment had not been paid the stock had become valueless and the trustee and his surety were liable for the loss he had occasioned. The dissent (p. 350–354) citing *Smith* v. *Hurd,* 12 Met. 371 (a stockholder may not sue directors for negligence in conducting corporate

affairs), stated the view that the damage to stockholders, being indirect, may be redressed only by action which seeks reimbursement for the corporation.

In *Perry* v. *Perry*, 339 Mass. 470, 482, the issue whether a beneficiary of a testamentary trust, the trustees of which were officers of a family corporation, could require the enforcement of the corporation's rights against the officer-trustees was said to be one to be dealt with in another pending case in respect of the allowance of the trustees' account. We held that the issue was not presented in the proceedings then before the court for the removal of trustees.

The petitioners, however, by their petition in the Probate Court, do not seek to recover for damage to the trust nor do they seek an accounting due to the trustees. They press the claims belonging to Raimond, Inc.; the accounting sought is due to the corporation.

We need not decide whether the separate duty concept, exemplified in the New York cases, would give the Probate Court jurisdiction if the trustees were seeking to recover the loss in value of the stock held by them. Such relief not being sought, the claims, other than the claim for wrongly voting to sell assets, are not claims relative to a written trust. It is to be noted, however, that suits for direct enforcement of a beneficiary's rights against trustees because of their acts as corporate officers may present serious difficulties of proof of damages and the risk of double recovery. The decrease, if any, in value of shares of stock cannot be determined with any precision pending determination and enforcement of the direct rights of the corporation. See 50 Harv. L. Rev. 963, 965–968.

4. We assume that the demurrers might be sustained on the specified grounds of multifariousness and lack of conciseness and that if the petition were to be tried in the Probate Court under G. L. c. 215, § 6, an amendment to exclude matters not relating to the trust would be in order. But we think it will not serve the ends of justice to have the claim relating to the trust separately tried. The petitioners, by setting out all the alleged wrongs to Raimond, Inc.,

or that concern it, recognize the appropriateness of disposing of all the claims in one suit.   This is highly advisable. With more than one suit, there will be the likelihood of overlapping areas of controversy and of divergent findings of material facts as to the same or related issues.

We think also that opportunity should not now be given to the petitioners to state and to try to sustain a case under the *Auditore* doctrine; they rightly at this stage press the claims of the corporation.

The subject matter of the petition could now be entertained under the newly established general equity jurisdiction of the Probate Court.   St. 1963, c. 820, § 1.   Adopting a course to permit that would, however, raise a question of precedence with respect to a pending proceeding for declaratory relief in the Superior Court.   That case[2] was begun after the hearing in this case in the Probate Court and before the effective date of the new statute.   See *Bennett* v. *Superior Court,* decided herewith, *post,* p. 783.   The proceeding in the Superior Court is appropriate to resolve all the claims that exist between the parties hereto.   We do not, therefore, adopt the usual course of reversing the decrees and permitting further proceedings in the Probate Court consistent herewith.

The decrees are vacated.   Upon remand a final decree is to enter in the Probate Court dismissing the petition without prejudice.   G. L. c. 231, §§ 124, 125.

*So ordered.*

---

[2] *Stone* v. *Massa,* Suffolk Equity No. 81779.