THE FIRST NATIONAL BANK OF BOSTON *vs.* WILLIAM A. SLADE, JR.

Essex. September 13, 1979. — November 19, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Civil,* Summary judgment. *Corporation,* Voting trust. *Trust,* Voting trust. *Fiduciary. Guaranty.*

There was no abuse of discretion by the trial judge in an action upon a guaranty in granting the plaintiff's motion for summary judgment before giving the defendant an opportunity to obtain discovery, as requested in a memorandum submitted in support of his motion for summary judgment, where each party filed supporting affidavits but the defendant did not file an affidavit pursuant to Mass. R. Civ. P. 56(f), 365 Mass. 825 (1974). [244-246]

A bank, as trustee of a voting trust holding all the shares of common stock of a business corporation, did not on the facts disclosed violate its fiduciary duty by collecting the corporation's debt to the bank [246-251]; and a guaranty of such debt, old and new, insisted upon by the bank but knowingly and freely executed by a trust beneficiary who was the president, treasurer, and chief operating officer of the corporation was not improper, unfair, or unlawful as to him with respect to the bank's status as trustee or to its status as a creditor, and judgment for it in an action on the guaranty was affirmed [251-255].

CIVIL ACTION commenced in the Superior Court on June 22, 1978.

The case was heard by *Adams*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Gene K. Landy* for the defendant.

*Carl K. King* for the plaintiff.

WILKINS, J.  On May 24, 1976, the defendant executed a document guaranteeing the obligations of P. S. Thorsen Co. of Mass. (corporation) to the plaintiff (bank).  In October, 1977, acting through Slade, its president and treasurer, the corporation executed an assignment for the benefit of creditors.  The bank brought this action to collect from Slade, as guarantor, the corporation's unpaid obligations to it.  Slade has defended the action principally on the ground that the bank as trustee of a voting trust, holding all the shares of common stock of the corporation, violated its fiduciary duty in collecting a portion of the corporation's debt to it as it did and that, therefore, Slade is not liable on his guaranty and the bank is liable to him for its breach of trust.  Each party sought summary judgment in its favor and filed supporting affidavits.[1]  We granted Slade's application for direct appellate review of his appeal from a judgment in favor of the bank.[2]  We affirm the judgment.

Slade argues that he should have been given an opportunity to obtain discovery before the court acted on the bank's motion for summary judgment.  He did not file an affidavit pursuant to Mass. R. Civ. P. 56 (f), 365 Mass. 825 (1974), representing that "for reasons stated [he could not] present by affidavit facts essential to justify his opposition" and requesting a continuance to take depositions or to obtain material through discovery.  Slade's failure to file such an affidavit or to explain his failure to do so is fatal to his

---

[1] Slade's motion for summary judgment was limited to questions of liability, leaving only the issue of the damages to which he would be entitled on his counterclaim for breach of trust.

[2] The judgment was in the amount of $119,270.91, consisting of principal ($96,653.60), interest ($14,679.60), and attorneys' fees ($7,937.71).

argument. *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.*, 8 Mass. App. Ct. 178, 183-184 (1979). *Norfolk County Trust Co.* v. *Vichinsky*, 5 Mass. App. Ct. 768 (1977). 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2740, at 723-724 (1973). 6 Moore's Federal Practice par. 56.22 [2], at 1341-1342 (2d ed. 1979). Slade's informal request for a delay, set forth in his memorandum submitted to the Superior Court judge in support of summary judgment in his favor, may present no issue for appellate consideration. See 6 Moore, *supra*, par. 56.24, at 1439-1440. At most, it raises a question whether the trial judge abused his discretion in granting summary judgment when he did. 6 Moore, *supra*, par. 56.27 [1], at 1559-1560. See *First Nat'l Bank* v. *Cities Serv. Co.*, 391 U.S. 253, 271 (1968). We perceive no abuse of discretion, particularly because Slade filed a motion for summary judgment in his favor and submitted supporting affidavits. The issue, therefore, is whether summary judgment was warranted on the affidavits filed and the allegations admitted in the pleadings.

In deciding whether the entry of summary judgment was proper on the ground that there was no "genuine issue as to any material fact" (Mass. R. Civ. P. 56 [c], 365 Mass. 824 [1974]), it is important to determine which party has the burden of establishing a contested question of fact in this case. Slade does not deny his execution of the guaranty, nor does he deny that by the terms of the guaranty he is obligated to the bank in the amount of the judgment. His claim is that the bank violated its fiduciary duty and thus both (a) relieved him of liability on the guaranty and (b) gave rise to an affirmative claim against the bank. As the party moving for summary judgment on his counterclaim, Slade has the burden of setting forth by affidavit specific facts warranting a judgment in his favor. We believe further that, where Slade has admitted liability according to the terms of the guaranty and seeks to defend on the basis of a claim that the bank violated its fiduciary duty to him, he must come forward with allegations of specific facts which support that

defense. See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 558 (1976); *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.*, 8 Mass. App. Ct. 178, 181-182 (1979).

Although inferences may be drawn from underlying facts contained in material before the trial court, neither vague allegations and conclusory statements, nor assertions of inferences not based on underlying facts will suffice. See *Farley* v. *Sprague*, 374 Mass. 419, 423 (1978); *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. 243, 245 (1976); *Community Nat'l Bank* v. *Dawes, supra* at 559. Thus we must consider whether Slade has demonstrated that there is a genuine, triable issue. If, as we conclude, the facts which Slade presented do not demonstrate a defense, entry of summary judgment for the bank was proper.[3]

We summarize uncontroverted facts or, where controverted, the facts on which Slade relies. The corporation was formed in 1956 and succeeded to the business of a corporation which had been a customer of the bank for many years. The corporation's principal stockholder in the 1950's was William B. Wilkes. Wilkes personally indorsed the corporation's notes to the bank. In September, 1966, Wilkes, who was still the principal stockholder, and all the other stockholders created a voting trust with the bank as trustee to secure continuity of competent management. Slade signed the trust agreement individually and on behalf of the corporation as vice president. All the corporation's shares were transferred to the voting trust, and trust certificates were issued to each stockholder. During his life, Wilkes had an unrestricted proxy to vote all the stock of the corporation. The trust contained a provision requiring the corporation to purchase the interests of a deceased stockholder at a price established by the terms of the trust agreement. Payment of the purchase price was to be made by a down

_____

[3] In our subsequent discussion, we shall treat the facts in terms of whether they demonstrate an adequate defense to the bank's claim. Of course, the same considerations are applicable to Slade's assertion that he has a claim for breach of trust. If Slade has no shield to the bank's claim, he has no sword.

payment and a promissory note payable in instalments with the transferred certificate held as security for the debt and subject to return on a substantial default in the payment of any instalment. The trust provided for its termination only after the beneficial interests of William B. Wilkes and his wife, and their respective estates, had been sold and any indebtedness created by the sale of their interests in the trust satisfied.

When Wilkes died in 1971, the bank obtained full voting control of the corporation. The corporation entered into a six-year program of purchasing Wilkes's beneficial interest in the trust. In 1975, the corporation entered into a plan to purchase Mrs. Wilkes's shares. The bank acted as coexecutor for Mr. Wilkes's estate and as agent for Mrs. Wilkes. On the sale of the Wilkeses' stock, Slade would become the majority owner of the trust certificates, assuming that payment for the Wilkeses' shares was concluded. From 1971 through 1977, an attorney representing the bank served on the corporation's board of directors, and from mid-1976 through mid-1977 an officer of the bank also served on that board. The bank was well informed concerning the financial condition of the corporation.

In May, 1976, when the corporation had an unsecured loan of approximately $200,000 from the bank, it sustained a cash shortage caused by "a construction job which had gone sour." The bank agreed to loan an additional $150,000 on the condition that all the corporation's debt be secured by the corporation's receivables and that Slade, who was president and chief executive officer, guarantee the corporation's obligations to the bank. Slade and the bank knew that without new financing the corporation would be unable to meet its next payroll. Under the pressure of the circumstances, Slade signed the guaranty. A second loan agreement was executed in December, 1976, under which the bank obtained a security interest in the corporation's inventory in addition to its receivables.

In 1976 and in 1977 until June, the bank collected $30,000 due from the corporation in payment for the shares purchased from Mr. Wilkes's estate and from Mrs. Wilkes. In June, 1977, the bank directed that the corporation cease paying for the shares purchased from the Wilkeses. In the summer and fall of 1977, the bank collected $90,000 owed to it from funds of the corporation on deposit with the bank. The cash flow condition of the corporation became critical in 1977. Slade asserts broadly by affidavit that if "the bank had refrained from collecting the $90,000, [the corporation] could have survived as a business." His affidavits do not explain by specific facts how the corporation would have survived, after such a long period of increasing financial difficulty, if the bank had not collected $90,000 of the corporation's obligation to it. In October, 1977, the corporation executed an assignment for the benefit of its creditors. By the date of the filing of the complaint in this action, the corporation's debt to the bank had been reduced to approximately $96,500.

We have recognized that a trustee of a voting trust may use its power to vote the shares of a corporation to further its own interests, provided that, in doing so, the trustee does not act unfairly to the detriment of those to whom the trustee owes a duty. See *Stone* v. *Massa*, 351 Mass. 264, 276-277 (1966); *Bullivant* v. *First Nat'l Bank*, 246 Mass. 324, 333-334 (1923). As president, treasurer, and chief operating officer of the corporation, Slade can hardly argue that the bank violated any fiduciary duty it may have had to exercise judgment concerning the operation of the corporation's business. If the bank as trustee had any such duty, there is no claim that the bank acted or failed to act concerning the operation of the corporation in a negligent or improper way.

The bank, of course, had a substantial interest in and influence on financial aspects of the corporation and, as owner of all the corporation's stock, had the power to elect the corporation's directors and certain officers. There is no claim, however, that the bank ever explicitly used its voting

control of the corporation to force Slade or the corporation to take any action concerning the bank's loans or Slade's guaranty of them. Slade contends that he felt indirect pressure to execute the guaranty because of the bank's voting control over the corporation and that such indirect pressure was improper. The bank's insistence on the guaranty was not conduct as a trustee. We see nothing in the bank's dealings with Slade which could fairly be characterized as improper or unfair, apart from the bank's status as creditor as well as trustee. Slade knowingly and freely executed the guaranty. Thus, whatever worthwhile claim Slade may have relates to the bank's conduct as a creditor while also serving as a trustee of the voting trust.[4]

Our previous treatment of claims against voting trustees for action taken other than as trustee involved different circumstances. In *Lawrence* v. *Curtis*, 191 Mass. 240 (1906), we rejected an argument by a beneficiary of a voting trust seeking to charge the trustee for alleged misconduct in the administration of a corporation whose shares were held in the voting trust. We did not have to decide whether to adhere to that rule in *Bennett* v. *Florence*, 347 Mass. 707 (1964), but intimated that a direct claim against a person for corporate mismanagement seemed preferable to a claim against that person as trustee of a voting trust holding the

---

[4] We dispose at this point of one aspect of Slade's challenge to the enforceability of his guaranty. The facts do not warrant a claim that the bank acted unfairly in violation of Federal banking regulations (12 C.F.R. § 9.12[f] [1979]) in demanding and obtaining the guaranty. Similarly, assuming the applicability of G. L. c. 93A to the bank in these circumstances (see *Mechanics Nat'l Bank* v. *Killeen*, 377 Mass. 100, 110 n.8 [1979]), there is no support for Slade's claim that the bank engaged in "unfair . . . acts or practices" (G. L. c. 93A, § 2 [a]) in demanding and obtaining Slade's guaranty. Further, there is no substance to Slade's claim that the bank cannot enforce the guaranty because it did not mention its requirement of Slade's guaranty until after it had orally agreed to extend $150,000 of additional credit. No rule of law barred the bank from insisting on Slade's guaranty when it did. Even if the bank had agreed orally with the corporation on the terms of the loan, Slade cannot rely on that agreement. As an experienced businessman, Slade understood or should have understood the obligation that he was assuming.

corporation's shares. *Id.* at 713. In neither opinion is there any suggestion that a trustee of a voting trust must adhere to a higher standard of performance in its nontrustee activities. However, in each case (unlike the case before us), the plaintiff had a direct remedy available for the defendant's alleged wrongdoing.

We reject the bank's argument that its commercial department and its trust department should be viewed separately and that Slade can charge the bank only for its actions as trustee. The conduct of a trustee as trustee might be exemplary, and yet, in some other capacity, the trustee might take action for its own benefit to the considerable disadvantage of the beneficiaries of the trust. Such conduct should not be beyond judicial scrutiny. The bank is one entity and must take responsibility for the effect of its collective action. See 2 A. Scott, Trusts § 170.23A (3d ed. Supp. 1979); Restatement (Second) of Trusts § 170, at 365 (1959).

Although the bank's dual status as trustee of the voting trust and as creditor of the corporation requires careful scrutiny of its conduct, that dual role does not alone make the bank liable for all consequences adverse to Slade resulting from its conduct as a creditor. See *Bullivant* v. *First Nat'l Bank,* 246 Mass. 324, 334 (1923); 2 A. Scott, Trusts § 170.24, at 1384-1385 (3d ed. 1967). Slade misconceives the issue by arguing that the bank owed him special consideration as a prospective guarantor and as a guarantor because he was a trust beneficiary. There is no basis for ruling that the bank had a special fiduciary obligation to Slade in its dealing with him concerning the guaranty just because he was a beneficiary of the voting trust.

Although Slade as a guarantor obtained no special rights because he was a trust beneficiary, his involvement in the process by which the bank acquired and exercised its rights as creditor is important in determining whether he may avoid liability to the bank. Slade may not rely on the rights of others. For example, he has no basis for arguing, as he does, that the bank acted unlawfully and preferentially to itself in taking security for the corporation's old debt out-

standing on May 24, 1976.[5]  The rights of other creditors of the corporation to object to the bank's action are not rights which Slade may assert.  The beneficiaries of the trust as beneficial shareholders had an interest which was subordinate both to unsecured and secured debt.

The issue is whether the defendant has shown by the facts admitted in the pleadings and represented by affidavit that the bank's actions (a) in requiring Slade's guaranty of the corporation's indebtedness to the bank, (b) in obtaining a secured position as to its loan, or (c) in collecting the corporation's indebtedness to it violated its fiduciary duty to Slade as a trust beneficiary.  Slade makes no showing that the beneficiaries' interests were harmed by the bank's requirement that he guarantee the corporation's indebtedness.  Nor has he made any showing that the transactions by which the bank obtained its secured position harmed the beneficiaries' interests.  The bank extended further credit in the amount of $150,000 in circumstances in which Slade has admitted new money was needed to meet the corporation's payroll.  Rather than destroying the corporation, the bank apparently gave it life-prolonging, if not lifesaving, assistance.  Although there is an assertion that the terms of the new financing were unreasonably harsh, Slade has made no attempt by affidavit to show that the corporation could have obtained better terms elsewhere or indeed that any other lender would have loaned funds to the corporation.

We come then to the remaining question whether the bank acted contrary to its fiduciary duty to Slade in collecting amounts due to it.  We include, among those amounts, funds which the bank collected until September, 1976, as

---

[5] Even if, as claimed, the bank's receipt of security for prior debts was in some way improper, there is no showing that it was improper as to Slade. In fact, as a guarantor of the corporation's debt, Slade stood to benefit from the bank's having a position superior to that of general creditors. We note further, in any event, that the amount which the bank seeks to recover from the defendant is less than the amount of new money ($150,000) which the bank put into the company on May 24, 1976. See *Lampasona v. Capriotti*, 296 Mass. 34, 40-41 (1936).

coexecutor of the estate of William Wilkes and until June, 1977, as agent for Mrs. Wilkes, in payment of the corporation's obligations in connection with its purchase of shares owned by the Wilkes estate and by Mrs. Wilkes. We also consider the bank's collection of $90,000 in the summer and fall of 1977 which Slade argues dealt a death blow to the corporation. He makes no claim that the bank violated any rights of the corporation in collecting these amounts. The question is whether and to what extent the bank's lawful actions as a creditor may have been unlawful as to Slade as a trust beneficiary because the bank was a trustee of the voting trust which held all the corporation's stock.

A rule of law would be too harsh and impractical which failed to recognize that a commercial bank and a business client may wish to maintain a relationship which involves the bank, in its various aspects, in the operations of the business and in the estate planning of one or more owners of that business. If the parties voluntarily enter into such an arrangement, the law should be hesitant to deny them the right to develop and enforce the terms of their own agreements. At times, indeed, the multiple role of the bank may prompt it to refrain from acting purely as a creditor, all to the advantage of the bank's customer and interested parties.

The facts of this case indicate that the corporation, and at least Slade and his predecessor Wilkes, as chief executive officers, voluntarily accepted the bank's joint role as trustee of the voting trust and as creditor of the corporation. The bank had been a creditor of the corporation for years before the voting trust was created. The bank, which had no investment responsibilities, assumed the position of trustee of the voting trust in order to assist in the sale of Mr. and Mrs. Wilkes's shares following Mr. Wilkes's death. The bank's major role as trustee was to act after Wilkes's death to elect officers and directors and to implement the sale of the Wilkeses' shares to the corporation. It was expected that Slade would take over management of the corporation and, on final payment for the Wilkes stock, become the principal stockholder. Mr. Wilkes had guaranteed the corporation's

debts to the bank, as Slade was asked to do. Slade knew of these arrangements and joined in many of them. In these circumstances, he was not a nonparticipating beneficiary of the trust who was harmed by actions of the bank in enforcing its rights. Cf. *Boston Safe Deposit & Trust Co.* v. *Lewis,* 317 Mass. 137, 141 (1944); *Svenson* v. *First Nat'l Bank,* 5 Mass. App. Ct. 440, 449 (1977). On behalf of the corporation, Slade gave the bank the right to collect its debts against corporate assets and agreed to the terms of the loan. Similarly, he should have expected that the bank would collect the corporation's obligations to the Wilkes estate and to Mrs. Wilkes. Completion of these purchases was most important to Slade, and a substantial default in payment of either of these obligations would have resulted in the return of the stock, respectively, to Mr. Wilkes's estate or to Mrs. Wilkes.[6] Slade knowingly assented to the bank's rights as creditor and had no reasonable expectation that the bank would not protect those rights in the manner in which it did. See 3 A. Scott, Trusts § 216 (3d ed. 1967); Restatement (Second) of Trusts § 216 (1959). Thus Slade has no valid basis for arguing that he is not liable on his guaranty to the bank on the ground that the bank violated any fiduciary duty to him.

There is another reason why Slade may not defend on the ground that the bank's action in collecting the corporation's debt when it did was unlawful. The affidavits do not allege facts, as opposed to conclusions, which, if true, would support the claim that the bank's collection of a portion of the corporation's debt caused the corporation to fail. The bank's action of withdrawing financial support may have affected the date of the corporation's demise, but there is no representation of facts to show that the corporation would have survived but for the bank's collection practices. If the corporation was not to survive in any event, Slade and the

---

[6] The obligation to the Wilkes estate was satisfied in September, 1976, at which time Slade became assured of being the owner of a majority beneficial interest in the corporation.

other beneficial owners of the company's stock sustained no loss from the bank's action.

Slade relies on *Dabney* v. *Chase Nat'l Bank,* 196 F.2d 668 (2d Cir. 1952), asserting that it presents a closely analogous situation.[7] There the bank had a duty of loyalty to certain debenture holders for whom it was acting as "trustee." At a time when the bank knew the debtor was in financial difficulty, the bank collected a portion of the debtor's obligation to it on a loan and took security for the balance. The debt to the bank was of a rank no higher than that of the debenture holders — both parties were initially unsecured creditors. See *Dabney* v. *Chase Nat'l Bank,* 98 F. Supp. 807, 854 (S.D.N.Y. 1951). The debtor subsequently went into bankruptcy. A majority of the court concluded that the bank obtained an advantage which constituted a breach of its duty to the debenture holders. In the case before us, as we have seen, there is no factual support for a claim that the bank took unfair advantage of Slade. Unlike the situation in the *Dabney* case and in other cases on which Slade relies, where the allegedly disadvantaged parties were nonparticipants in the bank's actions and had at least an equal claim to the debtor's assets, Slade agreed to the bank's right to assume and assert its position as a creditor.

We acknowledge that deciding this case in part on the ground that Slade was a consenting participant in the bank's assumption of multiple roles with respect to the corporation leaves unanswered the question of the extent to which a fiduciary holding stock in a corporation may also become a creditor of that corporation and assert its rights as creditor without incurring liability for breach of trust. We have recognized that, as here, consent to a fiduciary's multiple role may fairly protect it within reasonable limits. See *Turnbull* v. *Pomeroy,* 140 Mass. 117, 118-119 (1885). See also 2 A. Scott, Trusts § 170.9 (3d ed. 1967). The problem we de-

---

[7] For the facts involved in that case, see *Clarke* v. *Chase Nat'l Bank,* 137 F.2d 797 (2d Cir. 1943), and *Dabney* v. *Chase Nat'l Bank,* 98 F. Supp. 807 (S.D.N.Y. 1951).

scribe is not a new one. We have never accepted the argument that a fiduciary's corporate trust and corporate finance functions are independent and free from collective scrutiny. If a fiduciary assumes the additional role of creditor of a business which is owned in whole or in part by the fiduciary, the fiduciary must accept the possibility that its conduct as a creditor may lead to a claim of breach of trust. 2 A. Scott, Trusts § 170.23A (3d ed. Supp. 1979). Cases will have to be decided on their facts. A fiduciary may avoid such a problem by simply declining to assume a dual role. How far, if at all, a financial institution holding a small portion of the stock of a corporation in various trusts might be held liable for breach of trust for its actions as a creditor of that corporation is a matter which is not now before us and which will have to be dealt with if and when it arises.

*Judgment affirmed.*