Kaplan, Mitchell H., J.

INTRODUCTION

The plaintiff, Dr. Margo Roman filed suit against the defendants asserting claims for defamation, violations of the Massachusetts Civil Rights Act (MCRA), emotional distress, negligence and breach of contract.[2] This case is before the court on the defendants’ motion for summary judgment. For the reasons set forth below, the defendants’ motion is ALLOWED.

BACKGROUND

The undisputed facts and the disputed facts viewed in the light most favorable to the nonmoving party are as follows.
Dr. Roman is a veterinarian who practices integrative veterinary medicine that incorporates homepathic, holistic and other alternative treatments into her practice. In 1997, Dr. Roman discovered a pinhead-sized lesion on the third eyelid of her horse, Champ. She began treating this lesion with homeopathy and herbal medicine. In January 2004, the lesion in Champ’s eye had grown in size and the condition of his eye was such that Dr. Roman determined that surgical removal of the eye was necessary. Dr. Roman contacted veterinary ophthalmalogist Dr. Isabel Jurk at the Tufts Veterinary Hospital (Tufts) by telephone concerning Champ’s condition. Following this conversation, Dr. Roman brought Champ to Tufts on January 30, 2004 for evaluation.
As part of Champ’s evaluation, he received an x-ray. Dr. Roman observed Dr. Jurk and Dr. Steven Rowell, Tufts’ Hospital Director at the time, speaking with some students in the x-ray room. She could not hear what was said. When Dr. Jurk and Dr. Rowell left the x-ray room to speak with her, Dr. Rowell stated to Dr. Roman “like I was saying to the students ... like I was saying to them, you know, if this is holistic medicine, then this is malpractice. ”[3] The summary judgment record contains no statements from any of the students in the room. In fact, it does not disclose the identities of any of these students. Dr. Jurk told Dr. Roman that some students who were with her while she examined Champ, before he was x-rayed, had asked whether the treatment he received constituted malpractice. Here, too, the record is silent as to who these students were and whether they were the same students as those in the exam room during the x-ray. It also does not disclose whether Dr. Jurk responded to their inquiries by indicating that Dr. Roman had committed malpractice. Following the x-ray and an examination of Champ, Dr. Rowell and Dr. Jurk concluded that Champ had squamous cell carcinoma in his left eye and that it had metastacized. Dr. Jurk did not think that surgical removal of the eye was appropriate and recommended that Champ be euthanized. Dr. Roman rejected their recommendation and left with Champ. Another veterinarian subsequently removed Champ’s eye.
The summary judgment record also references other incidents that occurred on January 30, 2004 in which Drs. Rowell and Jurk allegedly demeaned Dr. Roman’s approach to veterinary medicine. Dr. Roman apparently examined a dog named Moto in a Tufts exam room, while Moto was there to see a Tufts veterinarian. Dr. Rowell took Dr. Roman out of that exam room and stated in a hallway with other people *308 moving around that if Moto got better it was because of Tufts and not because of her alternative treatment methods.[4] On another occasion that day, Dr. Roman sought out Dr. Jurk to explain to her that she had been managing Champ’s pain with acupuncture, homeopathy and herbs. Dr. Jurk, while in the presence of two students, rolled her eyes and said “I don’t believe any of that.” Dr. Roman contends that Drs. Rowell and Jurk were generally dismissive of her approach to veterinary medicine.
Dr. Roman refused to pay for the services rendered Champ. In a letter dated December 14, 2004 Tufts advised Dr. Roman that, “[ujntil and unless [the debt with Tufts] is resolved, you will be unable to obtain any medical or other services through the School. This will include any treatment for your own animals, continuing education, or any other service that the School might provide to you personally.”
In 2005, Tufts advertised a lecture on the “Dangers of Feeding Your Pet a Raw Diet” to be given on the Tufts veterinary school campus. Dr. Roman saw a flyer advertising the lecture and called the number listed for the Office of Continuing Education. Dr. Roman knowing that she was not permitted to attend any continuing education courses at Tufts, spoke to a woman in that office who told her that the lecture was open to the general public and that continuing education credits would not be issued for it. On the date of the lecture, May 17, 2005, Dr. Roman arrived at the building where the lecture was to be given. Defendant Susan Brogan, Assistant Director for Continuing Education, informed her that she could not attend the lecture. Brogan also stated that she would be arrested if she did not leave. When Dr. Roman approached a Tufts campus police officer on the property, the officer indicated that if Brogan told him to arrest her, he would do so, because the lecture hall is located on private property. Brogan testified at deposition that she excluded Dr. Roman from the lecture because she had not paid her veterinary bill. Dr. Roman advocated feeding pets a raw food diet and there is some indication in the record that the defendants knew of this interest. The lecture included a question and answer period at the end.
Dr. Roman states that she experienced emotional anguish as a result of the defendants’ allegations of malpractice regarding her treatment of Champ. She also alleges that she felt stunned, insulted, humiliated, indignant and emotionally and physically distressed as a result of being told to leave the raw food lecture. Dr. Roman says that these emotions return when she thinks about the event now. Dr. Roman also contends that her emotional state has impacted her physical health, as she experienced a worsening of eczema after her exclusion from the lecture, for which she ultimately required surgeiy.

DISCUSSION

Summary judgment will be granted when there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr. 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not have the burden of proof at trial, as is the case here, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). “[A]ll evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.R 56(e); Lalonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985). Further, and of particular significance in this case, “neither . . . conclusory statements, nor assertions of inferences not based on underlying facts will suffice” to establish a genuine issue of material fact requiring a trial. First Nat’l Bank of Boston v. Slade, 379 Mass. 243, 246 (1979).

I. Defamation

To prevail on her claim of defamation, Dr. Roman must show that the defendants “published a false statement about [her] to a third party that either caused [her] economic loss or was of the type that is actionable without proof of economic loss.” Phelan v. May Dep’t Stores, Co., 443 Mass. 52, 55-56 (2004). In the present case, the summary judgment record contains no evidence that any of the defendants published a false statement about her.
Dr. Roman alleges that Drs. Rowell and Jurk made defamatory statements maligning her as a holistic veterinarian to students inside the x-ray room. However, the only evidence of these alleged statements are the inferences Dr. Roman draws based upon what Dr. Rowell allegedly said to her outside of the x-ray room. *309 Neither the content of the alleged statement made in the exam room, nor the identities of the students who may have heard that statement, are known. This court has some doubt that statements made by a veterinarian practicing traditional veterinary medicine after examining a horse whose eye was in very poor condition after years of treatment by non-traditional means would constitute defamation, as opposed to opinion. However, the court need not reach this issue. Dr. Roman offers no evidence that Doctors Rowell or Jurk told the students that Dr. Roman had treated Champ and committed malpractice, nor that the students understood from other sources that either doctor was referring to Dr. Roman, or for that matter, that the students who allegedly heard these comments even knew that Champ’s owner was a veterinarian.[5] For this reason, summary judgment is entered for the defendants on counts I, II and III.[6]

II. Massachusetts Civil Rights Act

Dr. Roman contends that when Brogan prevented her from attending the raw food diet lecture, that action constituted an interference with her rights to free speech and assembly under Massachusetts and Federal law. “To establish a claim under the [MCRA] the plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by ‘threats, intimidation or coercion.’ ’’ Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996). The MCRA does not require state action. See Bell v. Mazza, 394 Mass. 176 (1985) (plaintiff alleging violations of Massachusetts Declaration of Rights need not allege state action); but see Redgrave v. Boston Symphony Orch, Inc., 855 F.2d 888, 904 (1st Cir. 1988) (“The right [to free speech] is to be free of state regulation . . .”).
There is no indication that Dr. Roman’s exercise or enjoyment of the right to free association was in any way affected by her exclusion from the lecture under either state or federal law. “Freedom of association guarantees an opportunity for people to express their ideas and beliefs through membership or affiliation with a group.” Caswell v. Licensing Com. for Brockton, 387 Mass. 864, 871-72 (1983). There is no evidence in the summary judgment record that Dr. Roman’s exclusion as an individual from the raw food lecture affected her right to membership or affiliation with a group. Dr. Roman’s contention that the defendants interfered with her “freedom of association” is simply inapposite.
The question of whether the right to free speech can only be interfered with by the state, i.e., is inherently “(t]he right to be free of state regulation," has not been decided. In Redgrave, supra, the First Circuit noted that “such a right traditionally has content only in relation to state action — the state must be neutral as to all expression. The right is to be free of state regulation . . .” 855 F.2d at 904. Assuming, arguendo, that Dr. Roman can state a claim under the MCRA for a private defendant’s interference with her right to free speech, none is established in this case.
Viewing the summary judgment record in the light (indeed brightest sunshine) most favorable to Dr. Roman, it might be said that (1) Dr. Roman knew that there would be a question and answer opportunity at the end of the raw food lecture; (2) Dr. Roman intended to speak her views at that time; (3) defendants knew that Dr. Roman would speak out during the question and answer session; and (4) defendants’ stated reason for excluding her — that she had not paid veterinary bills owed Tufts — was pretextual, and she was excluded to prevent her from speaking out at the lecture. Such actions still would not state a claim under the MCRA on which relief could be granted.
The issues in this case are akin to those in Redgrave. While that decision is not binding on this court, it constitutes persuasive authority and is instructive. In Redgrave, actress Vanessa Redgrave brought suit against the Boston Symphony Orchestra (BSO) after the latter canceled a contract for her to perform, allegedly because of her support of the Palestinian Liberation Organization and protests that her performance might therefore engender. 855 F.2d 888. In analyzing Redgrave’s claimed violations of free speech under the MCRA, the First Circuit concluded that the BSO could not be held liable “for exercising its free speech right not to perform.” Id. at 903. The court noted the conflict between the BSO’s and Redgrave’s rights to free speech and noted that “[i]f constitutional protections are effectively to protect private expression, they must do so, to some extent, even when the expression (or lack thereof) of one private person threatens to interfere with the expression of another.” Id. at 904.
This case implicates that very conflict. Tufts is a private university and its decision to make a lecture available to the public does not make it a public forum. As a private institution, Tufts has a right to present the topics and information that it chooses to present. Even if the reason for excluding Dr. Roman was pretextual and based upon her advocacy of raw food diets and not on her failure to pay for Champ’s veterinary services, Tufts had a right to control the presentation of the lecture from which she was excluded. “The freedom of . . . universities ... to pick and choose among ideas, to winnow, to criticize, to investigate, to elaborate, to protest, to support, to boycott, and even to reject is essential if free speech is to prove meaningful.” Id. In other words, Tufts did not have to provide a forum to someone who held views on raw food diets for pets that contradicted Tufts’ views on the science related to such diets and their safely. For these reasons, summary judgment shall enter for the defendants on counts V and VI.

*310
III. Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress, Dr. Roman must show “(1) that the defendants] intended to cause, or should have known that [their] conduct would cause, emotional distress; (2) that the defendants’] conduct was extreme and outrageous; (3) that the defendants’] conduct caused [her] distress; and (4) that [she] suffered severe distress. To be considered extreme and outrageous, the defendants’] conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community.” Howcroftv. City of Peabody, 51 Mass.App.Ct. 573, 596 (2001).
Even if this court “put as harsh a face on the [defendants’ actions] as the basic facts would reasonably allow,” no reasonable jury would be able to find the defendants guilty of extreme and outrageous conduct. Foley v. Polaroid Corp., 400 Mass. 82, 100 (1987), quoting Richey v. American Auto. Ass’n, 380 Mass. 835, 839 (1980). With regard to the events at the Tufts veterinary hospital, the facts in this case support nothing more than disagreements between veterinarians with different approaches to treatment. Brogan’s conduct in excluding Dr. Roman from the lecture, while personally upsetting to Dr. Roman, was not beyond all bounds of decency. For these reasons, summary judgment will enter for the defendants on counts VI, VII, VIII and IX.

IV. Negligence and Breach of Contract

Dr. Roman’s remaining claims pertain to Dr. Jurk’s refusal to perform surgery on Champ’s eye after he was examined at Tufts. Dr. Roman contends that Tufts breached a contract with her that was allegedly formed when she phoned Dr. Jurk to discuss Champ’s surgery. This court is unpersuaded that such a contract could be formed before Dr. Jurk had even examined Champ and determined if any treatment was appropriate. Dr. Roman also alleges that failing to perform the surgery constituted negligence. This argument is also unavailing. Dr. Roman was free to leave with Champ and take him to another veterinarian, which she admits having done. Therefore, summary judgment will enter for the defendants on counts X, XI, XII and XIII.

ORDER

For the foregoing reasons the defendants’ motion for summary judgment is ALLOWED as to all counts. Final Judgment dismissing the complaint shall enter.

Dr. Roman’s complaint alleges the following claims. Defamation: Count I against Tufts University, Count II against Steven Rowell and Count III against Isabel Jurk; Violation of Civil Rights: Count IV against Tufts and Count V against Susan Brogan; Intentional Infliction of Emotional Distress: Count VI against Tufts, Count VII against Rowell, Count VIII against Jurk and Count IX against Brogan; Negligence: Count X against Tufts University, Count XI against Rowell and Count XII against Jurk; Breach of Contract: Count XIII against Tufts.

This statement reflects Dr. Roman’s memory of what Dr. Rowell told her. It is accepted as true for the purposes of this motion.

Dr. Rowell testified that he believed it was not appropriate for Dr. Roman to examine Moto, because she was not on staff at the hospital and did not have hospital privileges.

Dr. Roman cannot rely on “inferences not based on underlying facts” to argue that a triable issue as to what was said to the unidentified students is established. First Nat’l Bank of Boston, 379 Mass. at 246.

WhiIe the complaint and/or the record may be read to allege defamatory statements in addition to those made in the x-ray room (e.g. statements involving Moto), Dr. Roman’s counsel clarified at the hearing that Dr. Roman was predicating her defamation claim only on the x-ray room statement.