Kaplan, Mitchell H., J.

INTRODUCTION

This action arises out of a motor vehicle accident. Defendant, Brenda Campbell, rear ended plaintiff, Francis Beckwith’s, automobile on July 22, 2003. The Campbell vehicle was insured by the defendant, Commerce Insurance Company (Commerce). Beckwith and his wife brought tort claims against Campbell and a claim against Commerce under G.L.c. 176D and G.L.c. 93A for failure to effectuate prompt, fair, and equitable settlement of their claims against Campbell. The tort claims were eventually resolved by arbitration, with the arbitrator awarding the Beckwiths $22,203.75, offset by $2,000 of PIP benefits. The matter is before the court on Commerce’s motion for summary judgment dismissing the claims asserted against it. For the reasons described below, Commerce’s motion is ALLOWED.

BACKGROUND

On July 22, 2003, Beckwith’s vehicle was rear ended by Campbell’s at a stop sign. The physical damage to Beckwith’s car was modest — $1,161. On August 1, 2003, Beckwith’s counsel notified Commerce that Beckwith was making a claim for bodily injury resulting from the accident. By letter dated August 7, 2003, Commerce’s adjuster responded. The letter informed Beckwith’s counsel that the limits of liability for bodily injury claims under its policy insuring Campbell was “100,000/300,000.” The letter asked for medical reports and bills and, alternatively, enclosed a consent form that would allow Commerce to obtain Beckwith’s medical records at its expense. Beckwith declined to sign the consent form.
Over approximately the next year, Beckwith’s counsel sent to Commerce copies of records regarding treatments that Beckwith was receiving since the accident and records reflecting visits that Beckwith had with a single doctor for a period beginning in July 2002 a year prior to the accident. The records received by Commerce suggested that Beckwith had serious back injuries that predated the accident with Campbell. In January 2004, Commerce wrote to counsel asking for records of Beckwith’s treatment for a five-year period preceding the accident; in particular, exams, studies and surgical reports relating to treatment of Beckwith’s back. These medical records were not provided.
In July 2004, counsel wrote to Commerce asking for information regarding its policy limits, although this information had already been provided in August 2003. Commerce resent the policy limits information by letter dated August 3, 2004, and on August 18, 2004, counsel wrote back to Commerce exhorting that “I once again demand policy limits on behalf of my client,” although this was, in fact, the first demand made on Commerce. The letter did not describe the injuries Beckwith had allegedly suffered as a consequence of the accident or why they entitled him to “policy limits.” On January 28, 2005, counsel sent Commerce a Chapter 93A demand letter, again demanding policy limits for Beckwith’s bodily injury claims. The 93A letter also contained no explanation at all concerning the physical injuries Beckwith had sustained as a result of the accident and why they warranted a policy limits settlement. The letter did, apparently accurately, note that counsel had called the Commerce adjuster in September, left a message, but never received a return call.
On February 22, 2005, Commerce replied to the 93A letter. It pointed out that the medical records it had received suggested that Beckwith had a history of significant back problems and related treatment dating back to a motorcycle accident in 1984. It offered $3,500 in settlement of Beckwith’s claim and concluded with the following statement:
As stated preciously, we are in need of your client’s prior records including the cat scans, x-rays, and MRIs as well as operative reports. We have received a sizable lien for Blue Cross Blue Shield for prescriptions and treatment from medical providers from whom we do not have the corresponding medical documentation, which will be needed in order to determine if this treatment was causally related to injuries sustained in this motor vehicle accident. To date we do not have these documents for review to properly evaluate your client’s claim . . . We will continue to negotiate this claim upon receipt of any additional documentation that you may supply. Please know that our position is to try and settle this matter in an amicable fashion and look forward to working with you in the future.
Commerce and Beckwith’s counsel thereafter had additional communication in which Commerce reiterated its position that it needed Beckwith’s medical records for the five years prior to the accident. While counsel apparently provided additional records relating to Beckwith’s post-accident treatment, counsel neither sent any records relating to pre-accident treatment, nor an authorization permitting Commerce to obtain the records itself. Beckwith never countered Commerce’s $3,500 offer and Commerce never increased that offer. Beckwith filed this action in November 2005.
After the matter was in suit, through discovery, Commerce obtained the medical records relating to Beckwith’s prior back injury and treatment. Summarily stated, these medical records revealed that Beckwith was in a work-related motorcycle accident in 1984, when he was a motorcycle police officer for the City of Worcester. He was unable to return to work as a police officer following the accident, and had been totally disabled since at least 2001. Prior to the July 2003 accident, Beckwith had either eight or nine lumbar surgeries (the record is unclear on the number), including at least two lumbar fusions, the last in *350 November 2002. In fact, Beckwith had seen his physicians in July 2003, shortly prior to the accident, because of persistent and radiating pain for which he was being treated with narcotic pain medications. Commerce had Beckwith’s medical history reviewed by a neurologist and an orthopedic doctor, who also performed an independent medical examination of Beckwith. Both physicians concluded that, while Beckwith may have had soft tissue injuries as a result of the July 23, 2003 accident, those injuries should have resolved, and there was no evidence that this motor vehicle accident exacerbated Beckwith’s preexisting disability or that musculoskeletal impairment resulted from it. The summary judgment record contains no medical or expert report to the contrary.

DISCUSSION

Summary judgment will be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not have the burden of proof at trial, as is the case here, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 809 (1991). “(A]ll evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); Lalonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusoiy statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985). Further, and of particular significance in this case, “neither . . . conclusory statements, nor assertions of inferences not based on underlying facts will suffice” to establish a genuine issue of material fact requiring a trial. First Nat’l Bank of Boston v. Slade, 379 Mass. 243, 246 (1979).
In O’Leary-Alison v. Metropolitan Property & Casualty Insurance Co., 52 Mass.App.Ct. 214, 217-19 (2001), the Appeals Court set out, at length, the standards to be applied in cases such as the instant matter where plaintiff contends that an insurer has violated Chapters 93A and 176D by failing to settle a matter in which liability for an accident is quite clear, but the damages resulting from that accident are very much in doubt. The relevant comments of the Appeals Court are as follows, with internal citations omitted for simplicity:
An insurer’s duty to settle arises when “liability has become reasonably clear.” G.L.c. 176D, §3(9)(f) . . . Liability, as the word is used in this context “encompasses both fault and damages.” . . . Conversely, insurers do not have an obligation to settle as to an insured whose liability is not reasonably clear . . . The relevant inquiry is whether [the insurer] reasonably believed that its insured’s liability with respect to damages was not clear . . .
To determine when an insured’s liabilily became “reasonably clear” an objective test is used. The fact finder determines “whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insure[d] was liable to the plaintiff’ ... In the circumstances of this case, where fault was not at issue, the inquiry is limited to damages . . .
An insurer’s good faith, but mistaken, valuation of damages does not constitute a violation of c. 176D . .. Considering all of the circumstances, including [the insurer’s] knowledge of the equivocal medical evidence supporting [plaintiffs] claim, it was not error for the judge to conclude that [the insurer’s] offers of settlement were reasonable and made in good faith, despite the fact that the damage award exceed [the insurer’s] estimate of [plaintiffs] success at trial.
In the present case, Commerce does not dispute that its insured, Campbell, was responsible for the accident. However, the physical damage to the car was modest. The question presented by the accident was whether it caused Beckwith serious bodily injury. By January 2004, Commerce’s review of the records that Beckwith provided to it gave it reason to believe that Beckwith had received treatment for back injuries and pain since the July 2003 accident, but also that he had significant preexisting back problems for which he had received care and for which he continued to take narcotic pain medications up to the time of the accident. It asked for Beckwith’s medical records for the five-year period preceding the accident; in particular, for imaging studies and operative notes. Beckwith’s counsel declined to provide those records.
In August 2004, counsel made his initial demand; he demanded the limits of Commerce’s policy for bodily injury coverage. In January 2005, counsel sent his 93A demand letter again demanding policy limits *351 in settlement of the Beckwith claim. Notably, neither the initial letter, nor the 93A demand letter, provided any explanation of the nature of injuries that Beckwith suffered as a result of the accident, nor why those injuries entitled him to the policy limits. Commerce offered $3,500 in response to the 93A demand, indicated a willingness to negotiate, but consistently explained that it needed Beckwith’s pre-accident medical records to evaluate the claim.
Beckwith argues that the post-accident treatment records and the limited records provided for the period July 2002 to July 2003 disclosed that Beckwith had a pre-existing back injury, and, therefore, Commerce was aware of this issue and could have taken it into consideration in making a more significant settlement offer. Beckwith misses the point. The limited medical records that Beckwith’s counsel provided were enough to make Commerce aware that Beckwith’s post-accident treatments and pain may well have been the result of a previous injury and not the July 2003 accident. Such information made it eminently reasonable for Commerce to investigate the nature of the pre-existing injury, and the surgeries and treatments received for it, in evaluating whether the post-accident treatments and pain were the result of its insured’s actions, or would have been experienced by Beckwith, regardless of whether the July 2003 accident had occurred. Beckwith’s counsel argues that he was not required to make those records available until suit was filed, and Commerce had the right to conduct discovery. That is true enough, but Commerce cannot be said to have acted in bad faith, when it declined to increase its offer before it could conduct a thorough investigation. Indeed, as the Appeals Court has noted “in the context of insurance claims . . . the plaintiff has a reciprocal duty to be straightforward and forthcoming in providing the information necessary to the defendant’s evaluation of the case." Parker v. Davollo, 40 Mass.App.Ct. 394, 402 n.9 (1996).
Indeed, an examination of Beckwith’s medical records, after they were obtained through discovery, caused two experts to conclude that, while Beckwith may have had some soft tissue injury as a result of the July 2003 accident, which should have resolved, there is no medical evidence that the motor vehicle accident either exacerbated or caused any kind of permanent or serious injury. Beckwith has offered no contrary evidence, either by way of expert report or treating physician note.
Beckwith also argues that the arbitrator’s award of $20,000 in his claim against Campbell is evidence of the bad faith, inadequacy of Commerce’s $3,500 offer to settle. He misstates the law. As noted above, the 93A claim turns on whether the settlement offer was “reasonable and made in good faith, given [the insurer’s] own knowledge at the time of the relevant facts and law concerning the [plaintiffs’] claim.” Bolden v. O’Connor Cafe of Worcester, Inc., 50 Mass.App.Ct. 56, 66 (2000), citing Parker, 40 Mass.App.Ct. at 395 (where the court found that a $25 offer was not evidence of bad faith notwithstanding a $1,250,000 verdict when defendant did not contest liability but had reason to contest a causal connection between plaintiffs injury and defendant’s conduct). Here, Commerce’s knowledge of the cause of Beckwith’s back injuries was unquestionably imperfect when it considered Beckwith’s demand, because it lacked a complete medical history due to Beckwith’s refusal to provide it. Its reluctance to increase its offer was supported by the records that it eventually obtained, which reasonably supported Commerce’s view that Beckwith’s post-accident pain and treatment were likely the result of the preexisting injury.
Moreover, in this case, the arbitrator’s decision actually underscores the uncertainty of the causal relationship between the July 2003 accident and Beckwith’s subsequent treatments and pain: “I find that within the six month period $5,203.75 in medical expenses are probably related to this accident... This case presents a true fact finder’s query concerning how much to award an individual for increase in pain (which cannot be quantified) and where the usual yard sticks, such as disability, lost income or loss of earning capacity, inability to perform family and daily activities, are wholly or mostly missing because they all existed to a greater or lesser extent before the accident.”
The summary judgment record establishes that, especially in view of Beckwith’s conscious decision not to provide Commerce with his medical records describing the full extent of his pre-existing back injury and the surgeries and treatments that it required, there are no genuine issues of fact with respect to Commerce’s conduct with respect to settlement of Beckwith’s claim, and Commerce is entitled to judgment as a matter of law.[3]

ORDER

For the foregoing reasons, Commerce’s motion for summary judgment is ALLOWED. Judgment shall enter dismissing Beckwith’s claims against Commerce.

Beckwith makes much of the fact that Commerce did not return his counsel’s September 2004 telephone call or communicate with counsel until it received the January 2005, 93A demand letter. The court agrees that Commerce should have been more diligent in responding to counsel during this period, but notes that counsel did not follow-up on his unreturned call before sending the 93A demand letter, and never sent the medical records that Commerce consistently and properly requested. A failure to return a telephone call is insufficient evidentiary support on which to rest a Chapter 176D/93A bad faith claim.