CULLEN ENTERPRISES, INC.[1] & another[2] *vs.*
MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING
ASSOCIATION.

Suffolk. January 6, 1987. — May 13, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Practice, Civil,* Summary judgment, Relief from judgment. *Judgment,* Relief from judgment. *Consumer Protection Act,* Insurance, Unfair and deceptive practice. *Bankruptcy,* Trustee's rights. *Insurance,* Burning of insured property; Fire: interest of trustee in bankruptcy.

In a civil action, partial summary judgment was properly ordered in favor of a mortgagee seeking recovery from an insurer of a portion of the insurance proceeds on certain premises which had been destroyed by fire, where the materials before the judge contained no averments of fact indicating that the mortgagee was involved in causing the fire, nor gave any support to the insurer's bare assertions that the mortgagee had not provided it with adequate substantiation of its mortgage interest. [889-893]

No abuse of discretion appeared in a judge's denial of a party's motion, under Mass. R. Civ. P. 60(b), from relief from an order allowing an opposing party's motion for partial summary judgment, in the absence of any threshold showing that certain evidence, claimed to be newly discovered, could not by the exercise of reasonable diligence have been made available at the time of the summary judgment proceeding. [893-895]

With respect to a mortgagee's claim under G. L. c. 93A, the Consumer Protection Act, against an insurer, alleging that the insurer's knowing and wilful failure to make timely payments under a policy of fire insurance constituted an unfair and deceptive practice, this court allowed to stand the judge's determination, based largely on his assessment of the credibility of witnesses, that the insurer's conduct had not violated c. 93A. [895-897]

A corporation's receiver in bankruptcy was in fact the insured party on a policy of fire insurance on the corporation's restaurant premises, a policy which its president had obtained after the receiver had been appointed by a Federal bankruptcy judge, and neither the president's subsequent arson

---

[1] By its trustee in bankruptcy, Vincent Losinno.

[2] James B. Cullen.

of the premises, nor the policy's incorrect listing of the receiver as a mortgagee thereof, had any bearing on the receiver's rights. [897-900]

CIVIL ACTION commenced in the Superior Court on September 26, 1977.

A motion for partial summary judgment was heard by *George W. Cashman*, J., sitting under statutory authority, and the case was heard by *Paul G. Garrity*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul M. Lane* for Vincent Losinno.

*Mark F. Sullivan* for James B. Cullen.

*Francis M. Lynch (Frank T. Barber, III*, with him) for the defendant.

ABRAMS, J. This case involves claims of the plaintiffs — Vincent Losinno, trustee in bankruptcy of Cullen Enterprises, Inc., and James B. Cullen — against the defendant, Massachusetts Property Insurance Underwriting Association ("Fair Plan"),[3] for proceeds under a fire insurance policy issued in compliance with G. L. c. 175, § 99, by the Fair Plan to Cullen Enterprises.

The basic facts are as follows.[4] In May, 1973, the plaintiff James Cullen sold to William Saccone and Barbara Saccone all the shares of stock in his restaurant business, incorporated under the name Cullen Enterprises, Inc. William Saccone agreed to continue making payments to the Ipswich Savings Bank on the first mortgage. Saccone also gave Cullen a partial down payment and a promissory note secured by a mortgage in the amount of $181,000. Saccone became delinquent on his payments to Cullen, and business declined at the restaurant. In March, 1975, Saccone made his last payment to Cullen.

---

[3] The Fair Plan consists of an association of all insurers licensed to provide property insurance in the Commonwealth. The Fair Plan exists pursuant to State and Federal law. The purpose of the Fair Plan is to provide property insurance to high risk individuals and businesses. See G. L. c. 175C; *Hudson* v. *Massachusetts Property Ins. Underwriting Ass'n,* 386 Mass. 450, 452-454 (1982).

[4] We relate additional facts in our separate discussion of each issue.

In the spring of 1975, Saccone sought protection from his creditors by filing a petition under c. 11 of the Bankruptcy Code of 1898[5] in the United States Bankruptcy Court. The bankruptcy judge appointed the plaintiff Losinno receiver of Cullen Enterprises, Inc., in May, 1975. In addition, Saccone applied for and received from the Fair Plan a fire insurance policy in the amount of $200,000 covering the building and $50,000 covering the contents for a term of one year beginning on July 25, 1975. The Ipswich Savings Bank was named as first mortgagee on the insurance policy, and Cullen was named as second mortgagee. Losinno was listed after the two mortgagees in the mortgage interest section of the policy.

On September 29, 1975,[6] a fire totally destroyed the restaurant. The fire was of suspicious origin. There was evidence that Saccone had set it. In October, 1975, the Fair Plan paid Ipswich Savings Bank, the first mortgagee, the amount due on its mortgage in return for an assignment of the note and mortgage. The Fair Plan refused to pay either Cullen or Losinno, who became the trustee in bankruptcy.

Cullen and Losinno commenced this action against the Fair Plan in September, 1977. The Fair Plan in its answer raised the affirmative defense that the plaintiffs violated the fraud and concealment clause of the policy. The complaint was amended in March, 1978, by substituting Losinno as trustee in bankruptcy and by adding a count for relief under G. L. c. 93A. Cullen moved for partial summary judgment on his mortgage claim. The motion judge allowed the motion for summary judgment as to the Fair Plan's liability. Cullen was awarded the money left on the building portion of the policy after the payment to Ipswich Savings Bank and an additional $20,000, which had been paid to the Fair Plan after the trustee in bankruptcy sold the property of Cullen Enterprises. The Fair Plan filed a timely notice of appeal. The Fair Plan moved to

---

[5] The code was amended in 1978, but the proceedings relevant to this case began before those amendments took effect. The old code remained effective for proceedings begun prior to October 1, 1979. P. L. 95-598, Title IV, § 402 (a) (Nov. 6, 1978).

[6] A previous fire in April, 1975, damaged the restaurant.

vacate the partial summary judgment. The judge denied the motion to vacate. The Fair Plan again filed a timely notice of appeal.

In 1984, after a jury-waived trial on Cullen's c. 93A claim and on Losinno's claim, the judge concluded that there was no merit to the c. 93A claim against the Fair Plan. The judge also determined that Losinno was not entitled to recover under the insurance policy because he succeeded to Saccone's interest and Saccone was not entitled to recover any proceeds from the policy because he was involved in the arson. Cullen and Losinno appeal these rulings.

We affirm the allowance of the motion for partial summary judgment for Cullen, the denial of the Fair Plan's motion to vacate, and the denial of relief to Cullen under c. 93A. We reverse the trial judge's denial of Losinno's claim under the policy.

1. *Cullen's motion for partial summary judgment.* On April 20, 1982, the plaintiff Cullen filed a motion for summary judgment. The judge considered the pleadings and the affidavits of the following individuals with attached copies of correspondence: Gardner Stratton, the independent insurance adjuster retained by the Fair Plan; Frank Barber, III, the Fair Plan's attorney; Richard L. Levine, Cullen's attorney from 1970 to 1979; and Cullen.[7] Based on this information, the judge allowed Cullen's motion for summary judgment on the issue of liability.[8] On appeal, the Fair Plan argues that this ruling was erroneous. We disagree.

If the pleadings and affidavits before the judge[9] "show that there is no genuine issue as to any material fact and that the

---

[7] The partial summary judgment stated that the judge also considered depositions, but neither the docket sheet nor the record before us reveals any depositions taken prior to the allowance of summary judgment.

[8] Although Cullen in his motion did not specify that the motion concerned solely the issue of liability, the judge allowed the motion with respect to only this issue.

[9] The Fair Plan in its brief argues that the *trial* judge's findings of fact support its assertion that summary judgment was improperly allowed. Reliance on facts not before the motion judge is improper. In our review of

moving party is entitled to a judgment as a matter of law," summary judgment is appropriate. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Once a motion for summary judgment is made and supported by affidavits, the "adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Mass. R. Civ. P. 56 (e). "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." *Madsen* v. *Erwin,* 395 Mass. 715, 721 (1985), quoting *Olympic Junior, Inc.* v. *David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972). See *McDonnell* v. *Flaharty,* 636 F.2d 184, 187 (7th Cir. 1980); *Liberty Leasing Co.* v. *Hillsum Sales Corp.,* 380 F.2d 1013, 1014-1015 (5th Cir. 1967). If the opposing party fails properly to present specific facts establishing a genuine, triable issue, summary judgment should be granted. See *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 554 (1976).

Those issues material to Cullen's claim include (1) whether he has a valid mortgage interest and (2) whether he was responsible in any way for the fire that destroyed the building. If he has a valid interest and if he were not involved with the suspicious fire, he is entitled to judgment. See G. L. c. 175, §§ 97 and 99 (1984 ed.). There were no facts in the defendant's affidavits at the time of the motion for partial summary judgment indicating that Cullen was involved in the fire.[10] Thus,

---

a motion for summary judgment we are "confined to an examination of the materials before the court at the time the rulings were made. Neither the evidence offered subsequently at the trial nor the verdict is relevant." *Voutour* v. *Vitale,* 761 F.2d 812, 817 (1st Cir. 1985), cert. denied sub nom. *Saugus* v. *Voutour,* 474 U.S. 1100 (1986). See 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2716, at 650-654 (1983).

[10] Despite the affirmative defense raised by the Fair Plan in its answer that the plaintiffs violated the fraud and concealment clause of the policy, there was no evidence before the motion judge suggesting that Cullen was in any way involved in the arson.

After entry of partial summary judgment, the Fair Plan attempted to vacate the judgment by adducing evidence suggesting Cullen's knowledge of the arson. See *infra* at 893-895 for our discussion of the motion to vacate.

the only facts material to the partial summary judgment concerned whether Cullen's claimed mortgage interest was valid and whether the Fair Plan received adequate notice of Cullen's status as mortgagee.

On this issue, we look to the documentary evidence accompanying the affidavits submitted for the judge's consideration. On June 18, 1976, Stratton, the Fair Plan's insurance adjuster, wrote a letter to Mr. Levine, Cullen's attorney, requesting information concerning Cullen's mortgage interest.[11] On February 2, 1977, Mr. Levine sent a letter back to Stratton, noting that Mr. Levine had no record of his having responded to the June 18, 1976, letter and asking that Stratton let him know if any response still was necessary. On both March 11 and April 11, 1977, Stratton again requested the information. On April 12, 1977, Mr. Levine responded, enclosing a copy of the promissory note, the mortgage, and a security agreement as to personalty.

On April 21, 1977, Stratton in a letter acknowledged receipt of Mr. Levine's April 12 letter. He requested "a photostatic copy of Mr. Cullen's records showing the dates and amounts of all payments received by him under the promissory note." He added that, "[w]hen this information has been received, this matter will be referred to counsel for [the Fair Plan]." On May 27, 1977, Mr. Levine sent copies of cancelled checks written by Saccone to the Cullen account at the Ipswich Savings Bank.[12] Finally, on October 6, 1977, Mr. Levine sent Stratton a letter with computations as to the amount of money owed Cullen on the mortgage.

This documentary history tended to establish that Cullen supplied the insurance adjuster with all the information re-

---

[11] The letter was attached to Stratton's affidavit. The photocopy in our records is poor. As best as we can read it, it requests a copy of the mortgage note, a copy of any security agreement, and a statement of "any amounts which have been paid on the original mortgage note, including dates and amounts."

[12] On September 13, 1977, Stratton referred the matter to the Fair Plan's counsel. In that letter, he wrote that he still was awaiting further information from the second mortgagee.

quested to substantiate his interest: the adjuster had the promissory note, the mortgage, the cancelled checks, and a statement of the amount owed Cullen on the mortgage. The burden thus shifted to the Fair Plan, as the opposing party on the motion for partial summary judgment, to provide some record support for its position that, in fact, Cullen did not provide information sufficient to substantiate his claim. See *Brown* v. *TWA,* 746 F.2d 1354, 1358-1359 (8th Cir. 1984); 10A C.A. Wright & A.R. Miller § 2727, at 143-145 (1983). The affidavits of Stratton and the Fair Plan's counsel simply contained bare assertions that they had not received the necessary information.[13] The Fair Plan did not file an affidavit establishing what further information it wanted and could not obtain beyond that already provided by the plaintiff. The Fair Plan's general denials do not contravene the documents before the judge. The Fair Plan made no claim under Mass. R. Civ. P. 56 (f) that it was unable to present by affidavit facts essential to justify its opposition to the motion. It did not "show [any] circumstances which hamstring [it] in presenting that proof by affidavit in opposition to the motion." Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961-1963 (ii), 77 Harv. L. Rev. 801, 826 (1964).

The documentary evidence before the motion judge, in sum, does not support the Fair Plan's contentions. Based on the evidence before him, the judge could conclude that the material facts which were not disputed showed that Cullen provided

---

[13] Stratton's affidavit of December 17, 1981, asserted that, despite his repeated requests for "any written documentation relative to Mr. Cullen's alleged second mortgage interest, including any records of payment by the mortgagor to Mr. Cullen [so that the] . . . claim could be evaluated, both in terms of its legitimacy and its true amount," he had not received the necessary documentation. Barber, the Fair Plan's attorney, stated in his affidavit taken on the same day, that "[o]n information and belief, the alleged second mortgagee, James Cullen, never provided satisfactory documentary evidence of the extent of any legitimate mortgage interest in the property, if any." Assertions "made on information and belief, as opposed to personal knowledge, are . . . disregarded in considering a motion for summary judgment." *Shapiro Equip. Corp.* v. *Morris & Son Constr. Corp.,* 369 Mass. 968 (1976). See *Madsen* v. *Erwin, supra* at 721.

the documentation requested by the Fair Plan. We affirm the allowance of the motion for partial summary judgment.[14]

2. *The Fair Plan's motion to vacate*. After the motion for partial summary judgment was allowed, the Fair Plan filéd a motion to vacate the order. In support of its motion, the Fair Plan asserted that it had obtained information, undiscovered and unavailable at the time of consideration of the motion for partial summary judgment, establishing a genuine issue of fact as to Cullen's knowledge of the arson and thus as to the Fair Plan's liability to Cullen.[15] That information was in the deposition testimony of one Allan Ponn, an attorney who represented Saccone from 1972 to 1979.[16] The judge denied the motion to vacate. We affirm this ruling.

Massachusetts Rule of Civil Procedure 60 (b), 365 Mass. 828 (1974), provides that, "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following [, among other,] reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time

---

[14] The Fair Plan also argues that an agreement between Cullen and Losinno filed in Bankruptcy Court totally bars Cullen's claim under the fire insurance policy. Pursuant to that agreement, Cullen's claim as a secured creditor was recognized and declared valid but was "subordinated to the interests of unsecured creditors sufficient to pay (a) all priority claims, fees and expenses of administration allowed by the Court including any commissions and/or fees allowed to the Receiver, the Trustee and their counsel, and (b) a dividend of 75% on allowed claims of general unsecured creditors. Nothing herein shall prejudice the right of any party hereto to object to any claim, or application for compensation or the like." This agreement was not before the motion judge whose ruling we are reviewing. It is therefore not before us for this purpose.

[15] General Laws c. 175, § 99, cl. twelfth, provides that "no act or default of any person other than [the] mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgage." The fraud and concealment provision explains that a policy is void "if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact." These two provisions suggest that if the mortgagee concealed the arson, he, like the insured, would be in default.

[16] Ponn was disbarred in 1982.

to move for a new trial under Rule 59 (b)." In a motion under subsection (1) of rule 60 (b), the moving party bears the burden of justifying the motion, see Reporters' Notes to Mass. R. Civ. P. 60 (b) Mass. Ann. Laws, Rules of Civil Procedure at 585 (1982), and "must make some showing of why he was justified in failing to avoid mistake or inadvertence" (footnote omitted). 11 C.A. Wright & A.R. Miller § 2858, at 170 (1973). See *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 227-228 (1979). Relief is not justified for "any kind of garden-variety oversight." *Goldstein* v. *Barron,* 382 Mass. 181, 186 (1980), quoting *Pasquale* v. *Finch,* 418 F.2d 627, 630 (1st Cir. 1969). Instead, "[t]he inadvertence, mistake or surprise as well as neglect must be excusable in order to give the court power to set aside the judgment." *Geigel* v. *Sea Land Serv., Inc.,* 44 F.R.D. 1, 2 (D. P.R. 1968). Similar considerations are relevant under rule 60 (b) (2).[17] The moving party may prevail only if "the evidence relied on was not available . . . for introduction at the original [proceeding] by the exercise of reasonable diligence . . . ." *DeLuca* v. *Boston Elevated Ry.,* 312 Mass. 495, 497 (1942). If the moving party fails to show why he did not have the evidence at the time of the original proceeding, the party will not prevail. 11 Wright & Miller, *supra* § 2859, at 183-184.

Resolution of a rule 60 (b) motion rests in the discretion of the trial judge, and we "will show marked deference to the lower court's resolution of such a motion." *Chu-Kun Woon* v. *Moy,* 17 Mass. App. Ct. 949 (1983). See *DeLuca* v. *Boston Elevated Ry., supra.* A denial of a rule 60 (b) motion "will be set aside only on a clear showing of an abuse of discretion." *Murphy, supra* at 227.

In its motion, the Fair Plan presented no evidence compelling the judge to make "the threshold finding that the evidence, claimed to be newly discovered, 'was not available [during

---

[17] The standard applicable in rule 60 (b) (2) motions is the same as that applicable in rule 59 (b) motions; therefore, decisions construing rule 59 (b) are authoritative in construing rule 60 (b) (2). 11 C.A. Wright & A.R. Miller, *supra,* § 2859, at 182; *Van Alstyne* v. *Whalen,* 15 Mass. App. Ct. 340, 347 (1983).

the proceedings on the summary judgment motion] . . . by the exercise of reasonable diligence. . . .'" *Graci* v. *Damon,* 6 Mass. App. Ct. 160, 166, aff'd 376 Mass. 927 (1978), quoting *DeLuca* v. *Boston Elevated Ry., supra* at 497. The Fair Plan asserts only that because the deponent Ponn represented Saccone from 1972 until 1979, Ponn's testimony was unavailable prior to the filing of the motion to vacate. The partial summary judgment motion, however, was filed and heard in 1982-1983.[18] There is no explanation of why an affidavit from Ponn or at least an affidavit from an officer of the Fair Plan was not filed explaining why the Fair Plan was unable to file an affidavit under rule 56 (f). See Kaplan, *supra.* On the record, there is no evidence from the Fair Plan that it was unable to file an affidavit between 1979 and 1982, the year the motion was heard. The judge did not abuse his discretion in denying the motion to vacate the partial summary judgment.

3. *Cullen's claim under G. L. c. 93A.* In March, 1978, the plaintiffs[19] amended their complaint by adding a claim alleging that the knowing and wilful failure of the Fair Plan to make payments under the policy constituted an unfair and deceptive practice under G. L. c. 93A. After trial, a judge of the Superior Court denied relief under c. 93A. Cullen appeals, arguing that the Fair Plan's actions, violating the principles of G. L. c. 176D, § 3, (9) (d), (e), (f), and (n), also violated c. 93A.[20] We disagree.

---

[18] The motion for partial summary judgment was filed in 1982, and the judge allowed the motion in February, 1983.

[19] Both Cullen and Losinno moved to amend the original complaint to add the c. 93A claim. Apparently only Cullen pursued the c. 93A claim at trial, because the judge's findings on the claim deal only with the claim as to Cullen. Cullen alone appeals from the judge's denial of relief under c. 93A.

[20] General Laws c. 176D, § 3 (1984 ed.), provides in relevant part: "The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

    ". . . .

    "(9) Unfair claim settlement practices: an unfair claim settlement practice shall consist of any of the following acts or omissions:

    ". . . .

We summarize the facts as found by the judge on Cullen's c. 93A claim. In September, 1977, Cullen commenced his action against the Fair Plan. The judge found that Cullen did not provide the full information required by the Fair Plan to process the claim until October, 1977. See *supra* at 891-892. The judge further found that the checks in payment of Saccone's promissory note to Cullen "created some legitimate confusion in the Fair Plan's adjuster's mind as to who[m] exactly those checks were made payable to and caused the adjuster to question Cullen's interest." [21] The judge found that the Fair Plan's attorney chose to defend the claims against the Fair Plan and "reasonably concluded that it was futile to seek to settle the matter." The judge concluded that, in these circumstances, "the Fair Plan did not engage in any deceptive conduct" and that "it would be stretching matters beyond any reasonable bounds to conclude that it acted unfairly . . . ." While the issue was close, the judge evidently believed that the Fair Plan's claims manager and adjuster were uncertain and confused as to whether Cullen had a legitimate interest in the

---

"(*d*) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

"(*e*) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

"(*f*) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonbly clear;

". . . .

"(*n*) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

General Laws c. 93A, § 9(1), as amended by St. 1979, c. 406, § 1, specifically provides that any person whose rights are affected by another person violating the provisions of c. 176D, § 3 (9), may bring an action for relief. Even prior to 1979, we held that c. 176D does not bar application of c. 93A to unfair and deceptive insurance practices and that c. 93A, § 2(a), "covers insurance practices in its prohibition of unfair or deceptive acts or practices in any trade or commerce." *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 78 (1977).

[21] The checks were made payable to the Cullen account at the Ipswich Savings Bank. Because the Ipswich Savings Bank was the first mortgagee, this caused some confusion.

property.[22] Because he determined that the Fair Plan's representatives were credible, he concluded that the Fair Plan's delay in determining whether to pay Cullen was not a violation of c. 93A. Credibility is for the trier of fact, *Lupia* v. *Marino,* 353 Mass. 749 (1967); *Jennings* v. *Bragdon,* 289 Mass. 595, 597 (1935), and we do not substitute our judgment for that of the trier of fact. *Joseph Amara & Sons* v. *Providence Steamboat Company,* 360 Mass. 850, 851 (1971).

Essentially, Cullen complains about the Fair Plan's delay in paying his claim under the policy. The Fair Plan, however, had every right to conduct its investigation both of the validity of Cullen's mortgage interest and of the possibility that Cullen was involved in the arson. After the partial summary judgment, the Fair Plan certainly had the right to appeal the judgment. Moreover, the major reason for the delay in finally resolving the issue of the Fair Plan's liability was the intervening trial on the c. 93A claim. Cullen could have hastened the appeal by moving for entry of a final judgment as to the partial summary judgment under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), which provides that, if there is an express determination that there is no just reason for delay, the court may direct entry of final judgment on some but not all of the claims. An appeal then could follow on the claims on which the judge entered a judgment.

4. *The claim of the trustee in bankruptcy.* At trial, the judge denied the claim of the plaintiff Losinno, the trustee in bankruptcy of Cullen Enterprises, for recovery under the fire insurance policy for the value of the contents of the restaurant.[23] Losinno appeals, essentially arguing that, because of his status first as custodial receiver in bankruptcy and later as trustee in bankruptcy, recovery under the policy should not be denied based on Saccone's arson.[24] We agree with this assertion.

---

[22] The claims manager testified at trial. The adjuster died before the trial. His affidavit was admitted in evidence.

[23] The appraised value of the contents of the restaurant was $43,611.

[24] Specifically, Losinno argues that: (1) the judge erred in prohibiting his recovery because of the alleged arson by an officer of Cullen Enterprises;

The facts relevant to Losinno's claim as found by the judge are summarized as follows. In approximately April, 1975, Saccone as president of Cullen Enterprises filed a petition in the United States Bankruptcy Court under c. 11 of the Bankruptcy Code of 1898, seeking protection from creditors. The Bankruptcy Court appointed Losinno as custodial receiver of Cullen Enterprises in May, 1975. As custodial receiver, Losinno received weekly reports from Saconne regarding the business. Based on this information, Losinno made periodic reports to the Bankruptcy Court.

After Losinno's appointment as receiver, Cullen Enterprises, Inc., William Saccone, president, and Ipswich Steak and Seafood House took out the fire insurance policy from the Fair Plan. "Vincent Losinno, Receiver in bankruptcy, AHIMA"[25] was listed as the third mortgage interest behind Ipswich Savings Bank and James Cullen. In 1978, Cullen Enterprises was adjudicated bankrupt and Losinno was appointed trustee in bankruptcy.

The judge concluded Saccone caused the September 29, 1975, fire. The judge ruled that "Losinno can have no more rights in this matter than Saccone" and that the defense of arson thus was available to the Fair Plan as to Losinno's claim under the policy. We reverse.

The purpose of the policy in the case at bar was to protect the assets and the property of Cullen Enterprises. The policy was taken out when Cullen Enterprises already was within the jurisdiction of the Bankruptcy Court. See *Imperial Assurance Co.* v. *Livingston,* 49 F.2d 745, 747 (8th Cir. 1931). The benefit of insuring the property and assets of Cullen Enterprises did not inure to Saccone, as president of the corporation, but instead inured to the potential bankruptcy estate and the creditors of the corporation. At the time the corporation took out

(2) the judge erred in imputing the corporate officer's alleged arson to the innocent insured corporation; (3) the judge erred in denying Losinno, who as trustee in bankruptcy possesses the rights of a lien creditor, the right to recover under the policy; (4) the judge erred in denying Losinno recovery because the Fair Plan has a right of subrogation against the alleged arsonist.

[25] "AHIMA" means "As his interest may appear."

the policy, Losinno was the receiver. The duty of a receiver is to preserve and protect the bankruptcy estate until termination of the bankruptcy proceedings or the appointment of the trustee. See *Meehan* v. *King,* 54 F.2d 761, 763 (1st Cir. 1932); *Bingaman* v. *Commonwealth Trust Co.,* 1 F.2d 505 (D. Pa. 1924). Thus, at the time the policy was taken out, Losinno was the insured party because it was he who represented the interests of the potential bankruptcy estate. Saccone, the president of the corporation which was involved in bankruptcy proceedings, was not insured under the policy. He merely managed the property on behalf of the creditors.

Because Losinno was the insured party under the contract, Saccone's arson has no bearing on Losinno's rights. The fraud committed by Saccone was not fraud committed by the insured. The insured, Losinno, is entitled to recover.[26]

The Fair Plan's mistake placing Losinno's name in the mortgage interest section of the policy does not change this result. The named insured was "Cullen Enterprises, Inc." Because that entity filed for bankruptcy before the policy was taken out, the only individual possible to represent the interests of the corporation was Losinno. Thus, the error in placing Losinno's name in the mortgage section rather than explicitly as the insured is only a slight discrepancy, and, as such, is without significance. See 2A M.S. Rhodes, Couch's Cyclopedia of Insurance Law § 23:7 (2d ed. rev. 1984). Moreover, the Fair Plan, placing Losinno's name on the policy as receiver in bankruptcy, issued the policy with knowledge of the relative rights of Losinno and the potential bankruptcy estate. The policy cannot be avoided by reason of a mistake made in recording the insured's name by an employee of the insurer to whom the Fair Plan assigned the risk. See *id.;* 7 M.S. Rhodes,

---

[26] The fact that Losinno, when he was appointed trustee, gained title to the entire bankruptcy estate of Cullen Enterprises as that estate existed at the time the petition in bankruptcy was filed (11 U.S.C. § 110 (a) [1976 ed.]), provides further support for our conclusion that Losinno, on behalf of the estate, should recover under the policy. Because Losinno had title to Saccone's property as of the time the bankruptcy petition was filed, Saccone's arson should not affect Losinno's claim.

*supra* at § 35:178. "The fact that the defendant[ ] erroneously described [the plaintiff's interest] . . . should not affect his right to recover on the basis of his actual interest." *Bergeron v. Fontaine,* 109 N.H. 370, 373 (1969).[27]

5. *Conclusion.* The order allowing the motion for partial summary judgment is affirmed, the order denying the motion to vacate is affirmed, and the ruling denying Cullen's claim under c. 93A is affirmed. The ruling denying Losinno's claim for recovery under the policy is reversed.

*So ordered.*

---

[27] The placement of Losinno's name in the mortgage interest section of the insurance policy creates an ambiguity because Losinno had no mortgage interest in the corporation's real estate. Because the contract of insurance is unclear, we look to that interpretation which "best effectuates the main manifested design of the parties. . . ." *Joseph E. Bennett Co.* v. *Fireman's Fund Ins. Co.,* 344 Mass. 99, 103-104 (1962), quoting *Rezendes* v. *Prudential Ins. Co.,* 285 Mass. 505, 511 (1934); *King* v. *Prudential Ins. Co.,* 359 Mass. 46, 50 (1971). The contract must be interpreted as a whole to give effect to its general purpose. See *Ober* v. *National Casualty Co.,* 318 Mass. 27, 31 (1945). The general purpose of the contract was to protect the assets of the corporation for the bankruptcy estate. It is consistent with the purpose for Losinno to recover as the trustee in bankruptcy.