Brady, J.
INTRODUCTION
This action was originally commenced by the plaintiff Trustees seeking to recover the deficiency owed by the defendant Silvas on a promissory note through a bill to reach and apply fire insurance proceeds allegedly due the Silvas as named insureds, as a result of a fire which occurred on December 23, 1990 at 82 Packard Way in Brockton, Massachusetts. Merchants & Businessmen’s Mutual Insurance Co. (Merchants) filed an answer denying that any proceeds were due the Silvas and further asserting that the Trustees as mortgagee had no independent right to the proceeds because they were not named in the policy. When this case came on for trial, the parties stipulated to all the material facts and provided the Court with all relevant documents.
BACKGROUND
The parties have stipulated to the following facts. Amilcar and Adalberto Silva (the Silvas) purchased 82 Packard Way in Brockton, Massachusetts on November 22, 1985 for a purchase price of $100,000 dollars and granted a take-back mortgage to the seller, Dymphna McGrail, in the principal amount of $98,000. The mortgage contained statutory conditions requiring the Silvas, as mortgagors, to maintain insurance on the property for the benefit of the mortgagee.[1] On January 25, 1988, McGrail assigned the note and mortgage for valuable consideration to Alan J. *333 Chartkoff, David Rice and Alan J. Pransky, as Trustees of the Morris Chartkoff Lifetime Trust (the Trustees).
On March 16, 1990, defendant Merchants and Businessmen’s Mutual Insurance Company (Merchants), through its agent, Gregory Pope Insurance Agency (Pope), issued fire insurance policy AM 20246546, effective that date for a period of one year. During the application process, Pope asked the Silvas if there was any mortgage on the property, and the Silvas said there was none. On February 16, 1990, Pope sent a letter to the Silvas stating that the policy would be issued through Merchants, that the property was a tenant-occupied single family house, and that no current mortgagee was listed in the policy. The letter instructed the Silvas to inform Pope whether the above information was correct or whether any changes were necessary. The Silvas never responded to the letter. Thus, the policy as issued named the Silvas as the insured and did not name any mortgagee.
On December 23, 1990, the building on the property was severely damaged by fire. At the time of the fire, the Silvas were in default on the mortgage in the amount of $97,377.90. Prior to the fire, there were never any communications between the Trustees and Merchants, either directly or through Pope. However, on December 31, 1990, the Trustees contacted Merchants and requested that they be added as a named mortgagee to the Silvas’ policy and that their interest on the policy be backdated to before the fire. Merchants refused to backdate the mortgage interest on the property. Thereafter, on January 13, 1993, the Trustees foreclosed on the property.
The Trustees thus commenced an action against the Silvas in Norfolk Superior Court,[2] seeking to reach and apply to the $110,382.02 mortgage debt owed by the Silvas the fire insurance proceeds allegedly owed them as named insureds under the policy issued by Merchants. This suit was transferred to Plymouth Superior Court and consolidated with a pending action by the Silvas to recover the fire insurance proceeds from Merchants, which denied liability under the policy based on numerous defenses including insured-involved arson.[3]
When the consolidated cases were called for trial in November of 1994, this Court (Steadman, J.) dissolved the consolidation order and the Silvas’ action against Merchants proceeded to trial. On November 10, 1994, the jury returned a special verdict in favor of Merchants, finding that the Silvas were not entitled to recover under the insurance policy because they had intentionally caused the fire of December 23, 1990, left the property vacant or unoccupied for a period of thirty consecutive days prior to the fire, and made material misrepresentations to Merchants both before and after the fire. Final judgment in favor of Merchants was entered on November 15, 1994 and has not been appealed.
DISCUSSION
The Trustees now seek to recover the proceeds of the fire insurance policy despite the fact that the Silvas are not entitled to said proceeds, and despite the fact that they as mortgagee are not named as an insured in the policy. Chapter 175, section 99, which governs the standard form of fibre policies in the commonwealth, provides:
Said standard form of policy . . . shall be substantively as follows . . . notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee’s right to recover in case of loss on such real estate. G.L.c. 175, §99 (1987).
The parties do not dispute that pursuant to this statute, a mortgagee named as such in a fire insurance policy has a right to recover the proceeds independent of the rights of the insured mortgagor.[4] They disagree, however, as to the effect of this statutory provision on an unnamed mortgagee’s right to recover under an insurance policy.
Merchants contends that in passing Chapter 175, §99, the Legislature intended to eliminate all common law recoveries for mortgagees and to proscribe mortgagees’ rights by the statutory provisions. It points to the language in section 99 stating:
No company shall issue policies or contracts which, under the authority of clause First of section forty-seven, insure against loss or damage by fire and lightning to property or interests in the commonwealth, other than those of the standard forms herein set forth.
Nothing herein contained shall authorize any addition to or modification of any of the provisions of said standard form relative to the rights of a mortgagee, a cancellation of the policy, a reference of the amount of a loss to three referees or the limitation of actions or suits. G.L.c. 175, §99 (1987).
Merchants thus concludes that the exclusive method by which a mortgagee can recover proceeds under a standard fire insurance policy is to be named in the policy as someone to whom proceeds are payable.[5]
The Trustees contend, however, that under section 97 of chapter 175, an insurance policy may be “made payable” to a mortgagee within the meaning of section 99 by means other than an explicit naming of the mortgagee in the policy. Section 97 provides:
If, by the terms of a fire insurance policy insuring a mortgagor, the whole or any part of the loss thereon is payable to mortgagees of the property, the company shall, upon satisfactory proof of the rights and title of the parties, in accordance with *334 such terms, pay all mortgagees protected by such policy in the order of their priority of claim as their claim shall appear, not beyond the amount for which the company is liable, and such payment shall be to the extent thereof payment and satisfaction of the liability of the company under such policy . . . Nothing herein contained shall prevent policies being made payable to a mortgagee or mortgagees in any other lawful manner. G.L.c. 175, §97 (1987).
The Trustees thus argue that notwithstanding the Silva’s failure to name them in the policy, they can recover as mortgagee in another “lawful manner," i.e., under a common law theory.
Even if this Court were to agree that the enactment of the standard fire insurance policy statute did not foreclose an unnamed mortgagee’s ability to recover insurance proceeds under the common law, the court concludes that the Trustees are not entitled to recover in the present case. Prior to the enactment of G.L.c. 175, §99 in 1873 and the enactment of §97 in 1878, several cases at common law stated the rule that:
where a promise is made by one person to procure insurance upon property, in which another has some interest, for the benefit of the latter, and then the promisor, with the intention of performing his promise, obtains a policy of insurance in his own name, the party intended to be benefitted will have an equitable lien on the policy and its proceeds, which he may enforce against the insurer or the promisor, or may maintain against the creditors of the latter.
Hazard v. Draper, 7 Allen 267, 269 (1863); Stearns v. Quincy Insurance Co., 124 Mass. 61, 62-63 (1878). However, the mortgagee’s recovery under this equitable lien theory, based on the existence of a mortgage covenant or other promise to insure, presupposed that the insured himself had some entitlement to the proceeds of the policy. See Hazard v. Draper, supra at 269; Stearns v. Quincy Insurance Co., supra at 62-63. Thus, this common law theory does not aid the Trustees in the present case.
Similarly, the case of Papamechail v. Holyoke Mutual Insurance Co. is inapposite to the Trustees’ situation. In that case, the plaintiff assumed a mortgage containing the statutory covenant requiring the mortgagor to insure the premises for the benefit of the mortgagee, but then instructed the insurer to issue a policy omitting the name of the mortgagee as a loss payee. 8 Mass.App.Ct. 849, 851 (1979). Atatimewhen the mortgage was in default, and the plaintiff owed the mortgagee a debt exceeding $22,000, a fire destroyed the property and the insurance proceeds were paid to the plaintiff. Id. at 852. The court held that the mortgagee was an intended creditor beneficiary of the plaintiffs contract with their grantor and could assert its rights in an action to reach and apply the proceeds of the insurance policy. Id. at 851-53.
The key to the Papamechail decision, however, was the court’s determination that “the right in the insurance policy is a property right of the [insured mortgagor] which can be reached by [the mortgagee] in satisfaction of the debt owed.” Id. at 853. Thus, the mortgagee in Papamechail was not allowed to recover proceeds directly under the insurance policy, as the Trustees seek to do here, but rather, was given the same right as any other creditor to attach an asset, the mortgagor’s right to the proceeds, to satisfy a debt. In the present case, it is undisputed that after the jury verdict of November 10, 1994, the Silvas have no property right in the proceeds of the fire insurance policy AM 20246546. Accordingly, the Trustees have no action to reach and apply the proceeds in the hands of Merchants.
This court thus concludes that the fire insurance policy at issue was not “made payable" to the Trustees as mortgagees within the meaning of G.L.c. 175, §§97 & 99, such that the Trustees have no independent right to recover the insurance proceeds from Merchants.
ORDER
When the entire case is in order for judgment, judgment shall enter on Count II in favor of defendant Merchants. It is not clear from the docket whether issues remain between the other parties. The clerk shall schedule a status conference to discuss what, if anything, remains to be decided in the case.

 Chapter 183, section 20 provides that the mortgagor “shall keep the buildings on said premises insured against fire in a sum not less than the amount secured by the mortgage or as otherwise provided therein for insurance for the benefit of the mortgagee and his executors, administrators and assigns. G.L.c. 183, §20 (1996).

 Chartkoff et. al. v. Adalberto & Amilcar Silva, Norfolk C.A. 93-00801.

 Amilcar & Adalberto Silva d/b/a Love-A-Lot Day Center v. Merchants & Businessmen’s Mutual Insurance Company, Plymouth C.A. 92-1993B.

 The statute thus changed the common law rule that a mortgagee who was named as a payee in a fire insurance policy was entitled to recover only such sum as became payable to the insured mortgagor under the policy. Hale v. Merchant's Mutual Fire Insurance Company, 6 Gray 169, 172 (1856); Loring v. Manufacturers’ Insurance Company, 8 Gray 28, 29 (1857); Franklin Savings Institution v. Central Mutual Fire Insurance Co., 119 Mass. 240, 241 (1876). Thus, at common law, if the insurance policy was rendered void as to the mortgagor for any reason, the mortgagee could not recover. Id.

 This Court notes that in each of the reported cases discussing a mortgagee’s right to proceeds under c. 175, §99, the mortgagee was in fact named in the policy as a payee. See J&T Enterprises, Inc. v. Liberty Mutual Ins. Co., 384 Mass. 587 (1981); Cullen Enterprises, Inc. v. Massachusetts Property Ins. Underwriting Assoc., 399 Mass. 886, 888 (1987); Gilbralter Financial Corp. v. Lumbermens Mutual Casualty, 400 Mass. 870, 870-71 (1987).