Billings, Thomas P., J.
For the reasons that follow, Defendant Mollie MacGillivray’s Motion for Summary Judgment is DENIED.
FACTS
This is an action in interpleader in which the plaintiff (“Guardian”) seeks an order specifying who is to receive the proceeds of a policy written by Guardian on the life of Chad Gerstel. The rival claimants are Mr. Gerstel’s estate, and his girlfriend Mollie MacGillivray, who was named as the policy’s sole beneficiary in the circumstances outlined below.
The following facts are, on the record before me, uncontradicted except as expressly noted. In 2003-04 Chad Gerstel, born 2/16/74, was employed by Union Capital Mortgage as a loan officer. He was single with no dependent children. His boss was George Fabrizio, Union Capital’s President and CEO and the designated Plan Administrator for Union Capital’s employee benefit programs.
Among other benefits, Guardian issued a group life insurance policy to Union Capital that provided coverage for eligible employees. Gerstel was such an employee. The policy provides for $80,000 in death benefits and an accidental death benefit equal to 100% of the death benefit, for a total of $ 160,000 in the event of an accidental death.
The document on which the present dispute centers is a Group Insurance Enrollment and Record Form, completed on a Guardian form in the name of Chad Gerstel and ostensibly dated December 30, 2003. This begins with personal and contact information for Mr. Gerstel. It is completed so as to elect all available coverages: Life & AD&D (Accidental Death and Dismemberment): Short Term Disability; Long Term Disability; and Dental.
There is also a box for “EMPLOYEE BENEFICIARY DESIGNATION.” This is completed as follows:
NAME RELATIONSHIP
Mollie MacGillivray Girlfriend
The form bears a signature in the name of Chad Gerstel, without initials or other indication that it was affixed by someone other than Gerstel. It is undisputed, however, that the form was completed, not by Gerstel, but by his boss, Mr. Fabrizio.
Fabrizio has submitted an affidavit in support of MacGillivray’s summary judgment motion, which described the circumstances as follows. In late December 2003, Union Capital held a company meeting at which a Guardian representative was present to provide information concerning the new benefits to be offered to employees through Guardian. The enrollment period was December 1 through 31, 2004. At the conclusion of the meeting, the Guardian representative took the original enrollment documents. It later mailed copies of the completed enrollment forms to Fabrizio, who met with those employees who had not attended the meeting, so that they could review the benefit options and sign the enrollment form.
Sometime in January, the affidavit continues, Fabrizio called Gerstel, who was out of the office and *158 would remain so during the time that the forms were due back at Guardian.[1]
I told Chad Gerstel I that telephone conversation that I had to get the documents in so as to meet the insurance carrier’s deadlines and asked if he would like to make the elections over the telephone, to which he said yes. We reviewed the benefits options and I completed the form per Chad Gerstel’s instructions. Since Chad Gerstel elected Life insurance, he also needed to designate a beneficiary. Chad told me to name Mollie MacGillivray, his girlfriend, as the beneficiary and he told he to sign his name on his behalf, which I did. After the telephone conversation ended, I reviewed the document for accuracy. Because I was unsure of the spelling of Mollie MacGillivray’s last name, I checked with a mutual friend, Nicholas Fairbanks for the correct spelling. Because I was initially in error, I made the necessary correction and filed the document with that (sic) of the other employees.![2]]
I subsequently provided Chad Gerstel with a copy of the document that I signed and submitted on his behalf naming Mollie MacGillivray as his beneficiary.
Fabrizio’s deposition testimony was consistent with his affidavit, and provided some elaboration. Fabrizio could not recall if Gerstel missed the group meeting in December or whether his form went missing. He had to have individual meetings with about fifteen employees, roughly half those eligible for benefits. When Gerstel authorized Fabrizio by telephone to complete and sign the form, Gerstel was out of the office on vacation — perhaps in Florida — and not due back until after the date by which Guardian was requesting return of the completed forms. After speaking with Gerstel by phone and getting his authorization to complete and sign the form, Fabrizio did so and sent the form to Guardian along with those of the other employees who had not previously completed them. He later suggested to Gerstel that he complete and sign a new form himself, but it does not appear that this was done.
Fabrizio’s testimony finds at least partial corroboration in the affidavit of Nicholas Fairbanks, a mortgage broker at Union Capital Mortgage. Fairbanks recalls that in about December 2003 or January 2004, he got a call from Fabrizio, who was looking for help with the spelling of MacGillivray’s last name. Fairbanks asked why, and Fabrizio replied that “he was doing Chad’s life insurance policy that they had at Union Capital Mortgage and listing Mollie as Chad’s beneficiary.” Later in the week Fairbanks brought up the subject of the phone call. The two joked about the odd spelling of MacGillivray’s name, and Fabrizio “stated that he had signed the designation of beneficiary form naming Mollie MacGillivray as the beneficiary of Chad’s life insurance.”
Guardian wrote Fabrizio a letter on February 5, 2004, informing him that the group plan was now in effect “for all eligible employees who elect to participate and are actively at work on a full-time basis (30 hours per week) at your usual place of business.” The effective date for life and accidental death and dismemberment coverages was February 1, 2004.
The life insurance policy provides that if there is no beneficiary at the time of the insured’s death, benefits will be paid to one of the following: his estate, his spouse, his parents, his children, or his brothers and sisters.
Chad Gerstel died on July 6, 2004 of injuries sustained in an automobile accident. Ms. MacGillivray filed a claim form with Guardian dated July 20, 2004.
On August 16, 2004 an attorney representing the Gerstel estate wrote to inform Guardian that the co-Administrators, who had evidently been provided a copy of the enrollment form, now questioned the validity of the signature thereon. Several exemplars of Mr. Gerstel’s signature, which (unsurprisingly) do not look like the signature on the enrollment form were enclosed. The letter closed by stating “the Estate’s position that it is entitled to payment under the policy that Mr. Gerstel purchased if it is determined that the application was not actually executed by Mr. Gerstel,” and by offering to supply additional information on request.
Fabrizio testified that he first told Guardian in late August 2004 that he, not Gerstel, had signed Gerstel’s name on the enrollment form. He also testified that he and MacGillivray are friendly, but have never dated; Fabrizio, his then girlfriend (now wife), Gerstel and MacGillivray used to socialize together. After Gerstel’s death, Fabrizio called MacGillivray once and met with her once at his house. He cannot remember which was which, but in one of these communications he told her that she was the beneficiary of Gerstel’s life insurance policy; in the other, that he had signed the enrollment form (a fact he had forgotten until he saw the form after Gerstel’s death).[3]
In its opposition to MacGillivray’s motion for summary judgment, the Estate argues that there are genuine issues as to the following material facts:
1) Whether any person ever had express or implied authority or obtained consent from Chad J. Gerstel to complete the life insurance enrollment form;
2) Whether Chad J. Gerstel knew and understood the contents and object of the life insurance enrollment form at the time that the form was allegedly completed at his direction; and
3) Whether Chad understanding^ and unequivocally adopted another person’s originally unauthorized and illegal signature on the enrollment form as his own at any subsequent time.
The Estate has little by way of substantive evidence directly contradicting the facts as set forth in *159 Fabrizio’s affidavit and deposition testimony. Instead, it proffers the following.
1. Although Fabrizio testified that he needed to obtain Gerstel’s authorization by telephone because there was an impending deadline for submitting the enrollment form, the Estate asserts that in fact the form was not submitted until August 11, 2004, over a month after Gerstel’s death. As support, it cited Guardian’s complaint for interpleader which, however, is unverified. The only admissible, Rule 56(e)-compli-ant evidence in the record on this subject is Fabrizio’s testimony that he submitted Gerstel’s form with others in Januaiy, and that in August, Guardian requested a copy of the form from Union Capital’s records.
2. The Estate also points to an e-mail from Guardian to Union Capital’s insurance agent dated February 3, 2004, naming three employees (not including Gerst-ner) who were listed on a prior carrier’s bill but for whom Guardian had not received enrollment forms, and requesting additional information for four other employees (not including Gerstner). This, the Estate argues, shows that the enrollment deadline was in fact have been more flexible than Fabrizio testified he had believed in January.
3. The Estate has also submitted the affidavit of Peter Grant, Gerstel’s stepfather and one of the co-administrators. This mentions that Fabrizio has been charged criminally in connection with the motor vehicle accident in which Gerstel was killed.[4] In November 2004 Fabrizio contacted Grant to arrange a meeting, and the two met on November 23. The affidavit continues:
With regard to Chad’s Guardian Life Insurance policy, Mr. Fabrizio for the first time stated that he, rather than Chad, had signed the enrollment form. Mr. Fabrizio claimed that he spoke to Chad over the phone on the day of the deadline for Union Capital Mortgage to submit the enrollment forms to Guardian Life Insurance Company, but did not say what date this phone call took place, where Chad was at the time of the call, why Chad had not previously completed the enrollment form himself, nor why Chad had not subsequently completed the form upon returning to the office.
Mr. Fabrizio stated that the Guardian Life Insurance enrollment form contained designations related to dental coverage and medical insurance as well as the designation of a beneficiary for the life insurance policy proceeds. Mr. Fabrizio stated that by filling out the form for Chad that Mr. Fabrizio was simply expediting dental and medical coverage for Chad. Mr. Fabrizio stated that he did not know of the implications of writing Mollie MacGillivray’s name as the beneficiary on the life insurance enrollment form. Mr. Fabrizio never stated that Chad ever told him that Chad wished Ms. MacGillivray to be the beneficiary of the proceeds of the life insurance policy nor did Mr. Fabrizio ever state that Chad knew that Mr. Fabrizio, by completing the form, had named Ms. MacGillivray as the beneficiary of the life insurance proceeds.
Mr. Fabrizio further stated that he would “stonewall” the insurance company and would not obstruct any claim the family made to the proceeds of the Guardian Life Insurance policy. Mr. Fabrizio stated that Chad had told him of Chad’s ongoing and increasing dissatisfaction with the relationship between Ms. MacGillivray and Chad.
In his deposition, Fabrizio testified that did not recall telling Grant that he did not know the implications of naming MacGillivray as beneficiary, and that he did, in fact, know the implications. He acknowledged, however, that in the January 2004 telephone conversation with Gerstel, “(flor whatever reason, you know, it was the dental and disability coverages that I think we were focused on with respect to that form.”
DISCUSSION
If credited, Fabrizio’s testimony would establish MacGillivray’s right to recover as the policy’s beneficiary, either because Fabrizio completed the form and signed Gerstel’s name with his express authorization, see Finnegan v. Lucy, 157 Mass. 439, 440 (1898), or because Gerstel later received a copy and, by inaction, ratified it. See Irving Tanning Co. v. Shir, 295 Mass. 380, 384 (1936)
Summary judgment is appropriate if, based on the undisputed facts and/or the disputed facts considered in the light most favorable to the opposing party, the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56 (c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively establishing that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may show the absence of a triable issue either by submitting affirmative evidence negating an essential element of the plaintiffs case or by demonstrating that proof of that element is unlikely to be forthcoming at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The standard for granting a summary judgment motion is the same as that for a directed verdict. Shimer v. Foley, Hoag & Eliot LLP, 59 Mass.App.Ct. 302, 303 n.3 (2003). This means that the motion must be denied if’“anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Dobos v. Driscoll, 404 Mass. 634, 656 (1989).
There are at least two additional wrinkles that are particular to this case. The first is the rule — estab *160 lished in federal practice, at least — that in an inter-pleader action “each claimant has the burden of establishing the right to the fund or property by a preponderance of the evidence.” 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, §1714 at 629 (3d ed. 2001). Neither Mass.R.Civ.P. 22 — which is identical to Fed.R.Civ.P. 22(1) — nor any Massachusetts case called to my attention appears to address this point. It makes perfect sense, however, that the burden of proof should not be altered simply because there are multiple claimants, or because the neutral stakeholder was the first to the courthouse.[5] I therefore hold that, for purposes of this Motion and at trial, MacGillivray bears the burden of proving her status as beneficiary.
The other is the issue, also discussed in federal cases but not, so far as I am aware, in any Massachusetts authority, of whether and when a witness’s testimony, even though not specifically contradicted by substantive evidence, still may not carry the day on summary judgment because it is impeachable.
Under familiar principles, of course, the non-movant’s bare assertion that there are material facts in dispute does not make it so.
Once a motion for summary judgment is made and supported by affidavits, the “adverse parly may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.P. 56(e). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment.” If the opposing party fails properly to present specific facts establishing a genuine, triable issue, summary judgment should be granted.
Cullen Enterprise., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Mass.R.Civ.P. 56(e) and Madsen v. Erwin, 395 Mass. 715, 721 (1985).
There are federal cases, however, which hold that a genuine, triable issue may sometimes appear not only from evidence that directly contradicts the movant’s evidence, but alternatively from evidence which tends to impeach the movant’s affidavits or other materials. This is particularly so where the movant bears the burden of persuasion at trial,[6] and especially where the motion depends on subjective matters that are exclusively within the movant’s knowledge. See, e.g., Carlin Communication, Inc. v. Southern Bell Telephone and Telegraph Co., 802 F.2d 1352, 1360 (11th Cir. 1986); Wilmington Trust Co. v. Manufacturers Life Ins. Co., 624 F.2d 707, 709, reh. den., 632 F.2d 895 (5th Cir. 1980).
This approach — at least where limited to cases in which the movant bears the burden of proof — is consistent with the instruction frequently given in Massachusetts jury trials that the jury are assessors of witness credibility who may believe all, some or none of a witness’s testimony, but that disbelief of a witness’s testimony that something happened is not affirmative evidence that it did not. See, e.g., P. Brady et al., Massachusetts Superior Court Civil Practice Jury Instructions, §1.11 at 1-26 (Supp.-2001). Where the party moving for summary judgment is the party that would be assigned the burden of proof at trial, the just-cited federal cases anticipate the possibility that the movant’s evidence, though not directly contradicted by other substantive evidence, may be so effectively impeached that it will not persuade the trier of fact.[7]
The federal cases also require that the non-movant’s impeachment evidence be the genuine article, such as “throwfs] into substantial question” the movants’ affidavits. Entrepreneur Media, Inc. v. Smith 279 F.3d 1135, 1150 (9th Cir. 2002); see Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 81 (5th Cir. 1987) (“evidence that could lead a reasonable person to doubt the credibility of the affiants’ testimony”). “[A] mere challenge to the credibility of a movant’s witnesses without any supporting evidence” will not do, Moreau v. Local Union No. 247, Int’l Brotherhood of Firemen and Oilers, AFL-CIO, 851 F.2d 516, 519 (1st Cir. 1988), any more than “[c]onclusory statements” and “general denials” will do. Cullen Enterprises, supra.
As on the question of the burden of proof, the just-cited federal cases dealing with the role of impeachment in summary judgment proceedings seem consistent with the construction given to the cognate Massachusetts rule, and I apply them here. Of course, the question of how much is enough — what kind and degree of impeachment evidence “could lead a reasonable person to doubt the credibility of the affiants’ testimony” (Lodge Hall Music) — does not lend itself to a bright-line rule. In this case, I believe the Estate’s proffered impeachment evidence does the job, at least for purposes of getting the case to a jury.
Fabrizio’s testimony is the sole direct evidence of the circumstances of MacGillivray’s denomination as beneficiary. He is friendly to MacGillivray, and he may now be unfriendly to the Administrators of Gerstel’s estate, who have (albeit after Fabrizio gave his affidavit and his deposition) brought a wrongful death action against him arising out of the accident in which he was also charged criminally.
This alone might not be enough to warrant disregarding Fabrizio’s testimony, particularly where he himself has no pecuniary or other tangible interest in the outcome of this dispute, and where his testimony is corroborated at least circumstantially in several respects.[8] There are also, however, the statements attributed to Fabrizio in the affidavit of Peter Grant.[9] Grant’s testimony that Fabrizio told him “that he did not know of the implications of writing Mollie *161 MacGillivray’s name as the beneficiary on the life insurance enrollment form” is somewhat difficult to accept at face value, given Fabrizio’s position as the founder and chief executive of a financial services company. It is also collateral to the issue at hand, which is whether Gerstel told Fabrizio that he meant MacGillivray to be the beneficiary.
Somewhat more telling, however, is Grant’s testimony that Fabrizio “stated that he would ‘stonewall’ the insurance company and would not obstruct any claim the family made to the proceeds of the Guardian Life Insurance policy.” If credited, this testimony is very difficult to square with Fabrizio’s testimony that in naming MacGillivaiy as beneficiary, he was carrying out Gerstel’s express direction. It could, in other words, lead a reasonable person to doubt the credibility of Fabrizio’s testimony on an outcome-determinative point — provided, of course, the factfinder believed Grant’s account of the conversation.
In the unusual circumstances of this case (see footnote 7), therefore, I hold that summary judgment must be denied, (a) where the movant (MacGillivray) has the burden of proof, and (b) where her evidence (Fabrizio’s testimony), even though uncontradicted by substantive evidence, is impeached by other evidence which, if credited, could lead a reasonable factfinder to doubt the evidence supporting the movant’s claim.
ORDER
For the foregoing reasons, Defendant Mollie MacGillivray’s Motion for Summary Judgment is DENIED.

The affidavit does not say so explicitly, but it is a reasonable inference that Gerstel was not present at the December meeting and did not complete an enrollment form at that time. No party appears to contend that there is more than one enrollment form in Gerstel’s name.

Guardian’s unverified Complaint asserts that it received Gerstel’s enrollment form after his death. No evidence in the record, however, established when the form was sent to Guardian, or whether it was before or after Gerstel’s death.

MacGillivray recalled in her deposition that Fabrizio told her, in a gathering at his house in August 2004, that Gerstel had named her as the beneficiary of his life insurance policy.

I take judicial notice that there is also, on the civil docket of this Court, a wrongful death case filed June 20, 2006 in which the Estate, represented by the same counsel as in this case, seeks damages from Fabrizio.

Where there has been a change of beneficiary of a life insurance policy, it is the new beneficiary who has the burden of proof. Cleary v. Cleary, 427 Mass. 286, 296 (1998), citing Kochanek v. Prudential Ins. Co., 262 Mass. 174, 177-78 (1928). That is not precisely this case. MacGillivray’s position is closely analogous to that of a new beneficiary, however, in that had the beneficiary designation been left blank, Gerstel’s estate or immediate family members would have been entitled to the policy proceeds.

Contrast McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996), holding that evidence proffered by the plaintiff— who had the burden of proof — to impeach the affidavits proffered by the defendant-movant did not create a genuine issue of material fact.

It bears noting here that, in our Court at least, it is usually the plaintiff who has the burden of proof, and usually the defendant who moves for summary judgment. The effective impeachment of defense witnesses maybe the deciding factor in a verdict for the plaintiff at trial, but this assumes the plaintiff has first presented enough substantive evidence to clear the jury rail. On summary judgment, in other words, impeachment of the movant’s witnesses will generally be irrelevant where the movant (usually the defendant) does not have the burden of proof, since impeachment alone cannot substitute for substantive evidence. The present case, where the movant does have the burden of proof, is the exception, not the rule.

There is, for example, Fairbanks’s testimony that Fabrizio told him in December 2003 or January 2004 that he had listed MacGillivray as the beneficiary of Gerstel’s life insurance policy. There is also the fact that Gerstel — who presumably took at least some interest in his employee benefits package— never changed the beneficiary designation.

I have ignored here the Estate’s assertion that Guardian did not receive the application form until after Gerstel’s death which, as noted above, in unsupported by affidavit or other evidence meeting the requirements of Rule 56(e).